Ada Blackwell et al., Administratrix of Estate of Pernell Ratliff, Deceased, Appellees, v. Alfredo Rodriguez Fernandez et al., Appellants, and Walter J. Cummings, Receiver et al., Trading as Chicago Surface Lines, Separate Appellants.

Gen. No. 43,170.

598

Opinion filed February 6, 1945. Rehearing denied February 20, 1945. Released for publication February 20, 1945.

LORD, BISSELL & KADYK, of Chicago, for certain appellants; ROBERT W. MACDONALD and FRED E. INBAU, both of Chicago, of counsel.

FRANK L. KRIETE, CHARLES E. GREEN, ARTHUR J. DONOVAN and C. A. WYNNE, all of Chicago, for separate appellants.

David Alswang, Benjamin Sugar and Melbourne A. Chapp, all of Chicago, for appellees; David Alswang, of Chicago, of counsel.

Mr. Justice Matchett delivered the opinion of the court.

This record brings appeals from four judgments entered for plaintiffs on the verdict of a jury.

The suits arose out of the conduct of Earl Tanner on the morning of October 31, 1942. He was then living at 218 East 43rd street with a roommate named Bryan. He was married but lived apart from his wife, who resided on the west side of the city. Tanner visited her the day before. They contemplated arrangements to again live together. He went from there to his room, where he awaited the return of his roommate. The Coney Island lunchroom, a tavern conducted by defendant Fernandez on premises owned by defendant Live Stock National Bank, was in the same building. Tanner and Bryan went there and Bryan bought a half pint of whiskey. They returned to their room, where he shared it with Tanner. Other friends came, and it was suggested they go to the Indiana Liquor Store, Inc., a tavern located at 4300 Indiana avenue. They went. Tanner bought a half pint bottle of "Ancient Age" whiskey and drank a part of it there. He then boarded a northbound street car, intending to go to the west side, changing cars at 22nd street, to again visit his wife.

The evidence shows that when Tanner boarded the street car he quarreled with the conductor about his fare; that the car was crowded; that he insulted the passengers, some of whom were ladies, and used obscene and abusive language in their presence and about them. All the passengers were colored, as was Tanner. He quarreled with one of these passengers, named Pernell Ratliff, drew his knife, stabbed Ratliff,

then kicked the glass out of the window and escaped through it to the street, where he was arrested by a police officer. He was indicted, tried by jury, convicted of manslaughter, sentenced to Pontiac. He was brought from there to testify.

Ratliff left surviving him his mother, plaintiff Ada Blackwell, and his grandmother, plaintiff Viola Smith. An administratrix, Standley, was appointed. The administratrix sued Cummings, et al., receivers of the Surface Lines, and Tanner under the Injuries Act. Ada Blackwell and Viola Smith separately sued Fernandez, the Live Stock National Bank of Chicago and Indiana Liquor Store, Inc. under the Dram Shop Act. These causes were tried together. Judgment was entered in favor of the administratrix against the receivers for $3,000 and against Earl Tanner for $5,000. Judgment was entered in favor of Ada Blackwell for $6,000 against Fernandez, the Live Stock National Bank of Chicago and Indiana Liquor Store, Inc., and a judgment against the same defendants in favor of Viola Smith for $1,000. Fernandez, the bank, the liquor store and the receivers each made motions for a new trial and for judgment notwithstanding the verdict and in arrest of judgment. These motions were overruled and judgments entered as stated. Tanner did not file an answer, was not represented by counsel and has not appealed.

Tanner testified he was not drunk. The evidence shows he was. The verdict of the jury, approved by the trial court, is sustained by the evidence on that point.

The theory of plaintiffs is that the railway receivers are liable because an intoxicated passenger, who assaulted and quarreled with deceased, was negligently allowed by their servants to ride on the street car without restraint. The theory of the receivers is that there is no evidence in the record that the crew in charge of the street car had any notice Tanner was

dangerous or likely to assault a fellow passenger. The receivers say the court erred in refusing to give the instructions requested by them at the close of plaintiff's evidence. He says (citing *Chicago City Ry. Co. v. Rood,* 163 Ill. 477–482) that a prima facie case was not made out by merely showing an injury was inflicted. He cites *Putnam v. Broadway & S. A. Ry. Co.,* 55 N. Y. 108. The question of whether under the facts as proved at the close of plaintiffs' case a peremptory instruction in defendants' favor should have been given is a question of law preserved by the motion for a directed verdict (*Alton R. Co. v. Gillarde,* 379 Ill. 308–311) and the motion for judgment notwithstanding the verdict (*Merlo v. Public Service Co. of Northern Illinois,* 381 Ill. 300–311) unless defendants waived it by presenting evidence.

The evidence was conflicting. Tanner testified. He admitted he had been drinking but denied he was drunk when he got on the street car or afterwards. His testimony tended to show the street car was crowded; and that he got into an altercation with Ratliff and stabbed him in self-defense. If Tanner's testimony was the only evidence the receiver would probably·have been entitled to an instruction in his favor. His was not the only evidence.

Scott, a disinterested passenger testified, that when he boarded the car at 39th street and Indiana avenue he saw Tanner standing up, talking in a loud voice to the conductor, cursing and quarreling about his fare. He heard Tanner curse a woman who boarded the car and says when the car reached 25th street Tanner came in from the back platform with a cigarette in his hand and went up the aisle saying to the passengers, "You got a match?" "The conductor sent me here to ask for a match." Ratliff replied, "No." The deceased then asked Tanner, "Why don't you go over there and sit down?" Tanner sat down but by the deceased, who asked him not to sit there. Tanner

arose, put his hand to his pocket. Ratliff got up to pass him. Tanner struck him. The blood flew out of his throat. Scott then cried out for the street car to stop and got out of it. He stood by the front door, where the conductor let out passengers. He looked inside the street car and saw Tanner on top of Ratliff. Tanner arose, looked both ways and said, "Let me out of here." He then broke the glass in the door with his fist, put his head through it and went out into the street. Scott's testimony is also to the effect that neither the conductor nor the motorman did anything at any time to protect the passengers from Tanner. The receivers did not produce either the conductor or the motorman or any other of the numerous passengers as witnesses but stood on their motion for a directed verdict at the close of plaintiffs' evidence.

The receivers contend, however, the evidence was insufficient to establish a prima facie case and throw the burden of proof on them, citing *Chicago City Ry. Co. v. Rood*, 163 Ill. 477–482. They argue no unfavorable presumption arose against the street car company from its failure to produce these witnesses, citing 22 C. J. 111 and 31 C. J. S. 850–851.

It is quite true defendant railways had the legal right to stand upon its motion made at the close of plaintiffs' evidence for an instructed verdict and perhaps considered from that standpoint no unfavorable inference could be drawn from the fact that neither conductor nor motorman testified. The appeal is from the judgment entered on the verdict of a jury, approved by the trial court. Scott's testimony tended to show the conductor and motorman both knew Tanner's intoxicated condition and improper conduct and did nothing to indicate disapproval of it or attempt to prevent it.

Defendants point out that there is no case in the Appellate and Supreme Courts of Illinois precisely like this. It relies on the *Putnam* case and argues the

request for an instruction in favor of defendant should have been given. If Tanner had been the only occurrence witness and circumstances had tended to corroborate what he said, this might have been true. However, that is not the record. The duty of the train crew in handling the case of a drunken and quarrelsome passenger is not always easy to determine. If the conductor did not know of Tanner's misconduct he was dull indeed. Ratliff was a passenger entitled to the highest reasonable degree of care. It was for the jury to decide whether he received it. They decided he did not. The trial court approved. This court does not disagree.

It is contended for the railways the court erred in refusing to give an instruction requested to the effect that if, after Tanner paid his fare, he gave no appearance or indication of an intention to assault anyone before injuring the intestate, a verdict of not guilty should be returned for the Surface Lines. The carrier was obligated to protect the deceased not only from assault but from insult. *Chicago & A. R. Co. v. Pillsbury,* 123 Ill. 9; *McMahon v. Chicago City Ry. Co.,* 239 Ill. 334; Restatement of Law of Torts, Vol. 2, § 449, p. 1202; Michie "Carriers," vol. 3 (1915 Ed.), par. 2555, p. 2020; 10 C. J., par. 1334, p. 906. The instruction was not accurate and directed a verdict. Whatever of merit was in it was fully covered by other instructions. It was not error to refuse it. *Daubach v. Drake Hotel Co.,* 243 Ill. App. 298; *East St. Louis & S. R. Co. v. Zink,* 229 Ill. 180, 190. The judgment is just. This disposes of the suit against the receivers of the Surface Lines. The judgment against them must be affirmed.

On behalf of defendants Live Stock National Bank of Chicago and Alfredo Fernandez it is urged the court erred in refusing to give an instruction in their favor at the close of all the evidence and in denying their motion for judgment notwithstanding the verdict.

This contention, an examination discloses, must be sustained for the reason that there is no evidence tending to show that Earl Tanner purchased from or was given any intoxicating liquor by Fernandez at any time. Fernandez did not testify. Tanner was the only witness on that point. He said his roommate was Charley Bryan; that he (Tanner) went to his apartment on the evening in question in response to a telephone call from Charley, who asked him to come and bring the key with him so that he (Charley) could get into his room. Tanner went there about 8:00 or 9 o'clock. Charley was not yet there. Tanner went to bed. Charley came about 11:00 or 11:30 p. m. that night. Charley asked Tanner to let him have a dollar. Tanner did so. Charley then said, ''Come on downstairs and I will buy you a drink.'' They went. Charley bought a bowl of chili and got a half pint of whiskey. Tanner stood about two feet away from him when Charley bought the whiskey. Tanner says, ''We carried the whiskey bought in the Coney Island lunch room back upstairs, and me and Charley took a drink out of it and while we were sitting there two of the boys came and knocked on the door.'' Tanner also says that one of the boys asked him to come up to the corner with them, where he could buy some liquor, to which Tanner relied that he had no money but the other boy said, ''They got some.'' He says they then walked into the liquor store at 4300 Indiana avenue, where he (Tanner) bought a half pint of ''Ancient Age.'' Tanner says, ''I drank a good big swallow out of that bottle, I think not over two. They drank about the same, and anyway with three it was just about half full, you know, one drink. It was just about 1:30 when I bought that whiskey over at the Indiana Liquor Store. Then I asked the boys if they wanted any more. They said, 'No,' so I said, 'Well, I got enough, too.' I put the whiskey in my pocket, what was left in the bottle.'' He further says, ''Charley had chili that

night along about 11: 00 or 11: 30; I didn't have anything. At most I had three drinks of whiskey that evening. I take one and Charley had two swallows out of the bottle, so that it ran three at the most. Three drinks of whiskey at that time sure didn't make me intoxicated.''

We do not find a scintilla of evidence that Fernandez or any of his servants either sold or gave intoxicating liquor to Tanner. The undoubted fact that the liquor was sold to his roommate, Charley Bryan, and by Bryan afterwards in his own room shared with Tanner, would not make Fernandez or Live Stock National Bank liable under the statute. This appears from an examination of the case of *Aden v. Cruse,* reported in volume 21, E. B. Smith, Ill. App. at 391, affirmed in the same case, 127 Ill. 231. In that case, at page 239, the Supreme Court said:

''We concur in the conclusion reached by the Appellate Court, that section 9 of the Dram Shop Act does not apply to persons who are not, either directly or indirectly, or in any way or to any extent, engaged in the liquor traffic, and that the right of action given by said section to one injured in her means of support is not intended to be given against a person who, in his own house, or elsewhere, gives a glass of intoxicating liquor to a friend as a mere act of courtesy and politeness, and without any purpose or expectation of pecuniary gain or profit.''

To the same effect are *Austin v. Bass,* 206 Ill. App. 435; *Gunderson v. First Nat. Bank of Chicago,* 296 Ill. App. 111.

Plaintiffs contend, however, that the Dram Shop Act does not require the selling or giving must be directly to the intoxicated person and cite on this point *Bennett v. Auditorium Bldg. Corp.,* 299 Ill. App. 139. It was there contended that drinks served to a woman who became intoxicated and paid for by her escort did not

constitute sale to the woman but a sale to the escort. This court in that case did not accept this contention. It was there held in substance that liquor served to one person and paid for by another and drank in the presence of both of them on the premises, amounted to a sale of liquor to the person to whom it was served. No such contention is raised by the facts in this case. The drinking of the liquor by these two in their own room and entirely outside the restaurant in which it was purchased was wholly disconnected from the act of Bryan in buying the whiskey. The cases are distinguishable on the facts.

Proof of a sale or gift of intoxicating liquor to Tanner by Fernandez was necessary in order to establish his liability or that of his landlord to third persons injured by Tanner's acts resulting from his intoxication. It follows, that the instruction requested in favor of the bank and Fernandez at the close of all the evidence should have been given and that the court erred in refusing their motion for a judgment in their favor notwithstanding the verdict.

It follows as a matter of course that the court erred in submitting one general form of verdict as to the issues with respect to both dram shop operators. *Hedlund v. Geyer,* 234 Ill. 589; *Morrill v. Lindemann,* 86 Ill. App. 75; *Adams v. Jurich,* 160 Ill. App. 522; *Hansen v. Crocker,* 160 Ill. App. 514.

The judgment, therefore, as to the Indiana Liquor Store will be reversed and the cause remanded for a new trial as to that defendant. The judgment against Alfredo Rodriquez Fernandez and the Live Stock National Bank of Chicago will be reversed and the cause as to them remanded with directions to the trial court to grant the motion for a judgment in their favor notwithstanding the verdict. The judgment in favor of the administratrix of the estate of Pernell Ratliff against the receiver of the Surface Lines will be affirmed.

*Affirmed in part and in part reversed and remanded with directions.*

NIEMEYER, P. J., and O'CONNOR, J., concur.