(No. 39743.—

Thomas J. Guthrie, Appellant, *vs.* Allan Van Hyfte, Appellee.

*Opinion filed Nov. 14, 1966.—Rehearing denied Jan. 17, 1967.*

BOZEMAN, NEIGHBOUR, PATTON & HENSS, of Moline, (DONALD A. HENSS, of counsel,) for appellant.

BARASH & STOERZBACH, of Galesburg, for appellee.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

The Henry County circuit court entered judgment upon a jury verdict awarding plaintiff, Thomas J. Guthrie, $35,000 for personal injuries allegedly caused by the misconduct of defendant, Allan Van Hyfte, in operating plaintiff's car. The Appellate Court for the Third Judicial District (64 Ill. App. 2d 303) found the verdict against the manifest weight of the evidence and reversed and remanded with directions to allow defendant's motion for a directed verdict. We allowed plaintiff's petition for leave to appeal.

Apparently Allan Van Hyfte filed a complaint against Thomas Guthrie alleging the latter to be the owner and driver of the car in which the former claimed to be a passenger, and claiming damages for injuries assertedly resulting from Guthrie's negligent operation of the vehicle. Guthrie subsequently filed a separate damage action against Van Hyfte in which Guthrie alleged Van Hyfte to be the driver and he the passenger. The cases were consolidated for trial with the results above noted. Only the judgment in the cause in which Guthrie is plaintiff was appealed.

With minor modifications we adopt and set forth the factual statement contained in the opinion of the appellate court: The undisputed evidence shows that on the evening of June 29, 1963, Van Hyfte, then 17 years of age, and Guthrie, then 20 years of age, drove in Guthrie's car to Davenport, Iowa, from Kewanee, Illinois, with two girls.

Prior to leaving Kewanee, Guthrie had one beer at a tavern and, after picking up Van Hyfte and the girls, purchased two six packs of beer which were consumed during the trip. In Davenport he purchased two more six packs of beer. The group drove around for a short time and returned to Kewanee. The trip from Kewanee to Davenport and back took place between 7:00 P.M. and 11:00 P.M. during which period 19 cans of beer were consumed, 7 or 8 of them by Guthrie by his own testimony. Upon the return to Kewanee the group went into the MOC Club where they remained for about an hour. Guthrie and Van Hyfte then left the club, leaving the girls there. Up to this point both parties agree that Guthrie was driving his own car which was a new, 1963 Chevrolet Impala with an oversize engine and 4-speed transmission. After leaving the club Guthrie and Van Hyfte conversed with two other boys for 15 or 20 minutes. The testimony of these boys fixes the termination of this conversation at no later than 1:00 A.M. and probably 5 or 10 minutes earlier. Guthrie and Van Hyfte then drove off with Van Hyfte driving.

From this point there is a sharp conflict in the testimony. Van Hyfte testified that they drove around Kewanee for about 20 minutes with Van Hyfte at the wheel, that they then returned to the MOC Club where there was a tight parking place in front of the club. Van Hyfte, fearing that he might scratch the car asked Guthrie to park it which he did. After remaining there for approximately 30 minutes they learned that the girls were going to ride home with someone else and the boys left with Guthrie driving. As they turned the corner of Third and Main the tires squealed and they proceeded north on Route 78 out of town. Before they were out of town a spotlight was shown on the car. Van Hyfte said it was the police and Guthrie accelerated. As they kept going faster Van Hyfte shouted to slow down because there was a curve ahead. At 1:30 A.M. they hit a cement abutment on the left side of a curve about a mile and

a half north of Kewanee going about 100 miles an hour. Van Hyfte flew across the console and fell out of the car on the driver's side.

Guthrie testified that after leaving the MOC Club at about 12:45 A.M. they drove across the street to talk with the two boys before mentioned. There Van Hyfte took the wheel. Guthrie states this to be probably 5 or 10 minutes after 1:00 A.M. They then drove to Third and Main streets where they stopped while Guthrie looked for his cigarette lighter and then turned north with the tires squealing. When the spotlight was noticed, Van Hyfte said it was the police and that there was beer in the car. Guthrie told Van Hyfte to stop and let him, Guthrie, drive and Van Hyfte said there wasn't time and he was afraid of what his father might say if they were caught drinking. Guthrie again asked for the wheel when the car accelerated and told Van Hyfte to slow down before they reached the curve. After the impact Guthrie testified there was an exchange of conversation between himself and Van Hyfte, that Van Hyfte asked what they were going to do and that Guthrie answered, "Don't worry about it. I will take care of everything." Van Hyfte also recalled that there was some conversation after the accident.

The officers testified they were on the scene immediately after the accident and found the left front door of the car open and Van Hyfte lying on the ground just a little back of the left front door. Guthrie was found in the front seat, his testimony being that the lower half of his body was between the radio (center of dashboard) and the glove compartment (far right).

After the accident Guthrie admits having told several people that he was driving at the time of the accident. These people testified at the trial, among them the officer investigating the accident who testified that Guthrie told him, both immediately after the accident and later at the hospital

that he was driving. Both boys were seriously and permanently injured.

It is here urged that the appellate court erred in reversing plaintiff's judgment and directing the trial court to enter judgment for defendant notwithstanding the verdict. Judgment *non obstante veredicto* is properly entered where, under the evidence in the case, it would have been the duty of the court to direct a verdict (Ill. Rev. Stat. 1965, chap. 110, par. 68.1(2)), and we have repeatedly stated a directed verdict against plaintiff is proper only when all of the evidence viewed most favorably to plaintiff, totally fails to establish one or more essential elements of his case. *Carter v. Winter*, 32 Ill.2d 275, 282, and cases there cited.

The appellate court concluded a verdict for defendant should be directed because it held plaintiff's evidence failed to establish his freedom from contributory wilful and wanton misconduct. Its opinion indicates it reached this result because plaintiff's testimony that defendant was driving at the time the injury occurred was "clearly and admittedly impeached" by his post-accident statements to others in which plaintiff said plaintiff had been driving at the time of the accident. That court then held impeachment of the testimony as to identity of the driver necessarily impeached plaintiffs' testimony regarding his demand that defendant stop the car and let plaintiff drive and his warning to defendant to slow down as they approached the curve.

It is, of course, apparent that plaintiff's testimony as to who was driving immediately prior to the accident was directly contradictory to pre-trial statements admittedly made by him. The essence of the appellate court opinion is that impeachment of plaintiff by showing the prior contradictory statements removed all probative value from his sworn testimony as to the identity of the driver, and left no plaintiff's evidence for the jury to consider as to whether due care was exercised. But this conclusion disregards the plain-

tiff's explanation of the reasons for the prior contradictory statements plus such elements of corroboration of plaintiff's testimony as are to be found in the undisputed fact that when last seen and talked to by their friends on the corner before the accident, defendant was driving, and the admitted physical fact that plaintiff, immediately following the accident, was found in the car near the middle of the front seat while defendant was lying on the ground outside the car near the open left front door.

The fact that a witness, be he a party or otherwise, has made out-of-court statements inconsistent with his sworn testimony does not *per se* destroy the probative value of his testimony, and it ordinarily remains for the trier of fact to determine where the truth lies. (58 *Am. Jur., Witnesses,* 863; *Chicago City Railway Co.* v. *Ryan,* 225 Ill. 287, 289; *Mathews* v. *Granger,* 196 Ill. 164, 171.) Defendant argues that the contradictory statements here were those of plaintiff, himself, and cites numerous law review articles, textwriters and decisions to the effect that such statements constitute substantive evidence against him of the facts stated. Such is, of course, the rule, and proof of such statements was here admitted. It then became the duty of the trier of fact—the jury—to evaluate the sworn testimony, the prior inconsistent statements and the explanations thereof, giving to the various witnesses such credence as the jurors determined proper. (*People* v. *Church,* 366 Ill. 149; *People* v. *Pursley,* 302 Ill. 62; *Beedle* v. *People,* 204 Ill. 197.) Therefore, direction of a verdict for defendant would not have been proper, and the appellate court erred in so holding.

Defendant also argues that even if he was driving at the time the injuries occurred, plaintiff was the owner of the car and retained the right of control thereof, and that since plaintiff had not contracted away or abandoned the right to control the driver, any negligence of the driver is imputed to plaintiff. Cited in support of this argument are *Palmer* v. *Miller,* 380 Ill. 256, certain appellate court decisions and

cases from other jurisdictions. These cases are inapposite for they turn on the failure of the owner to exercise or attempt to exercise his right of control over the operation of the car. Their citation overlooks the fact that plaintiff here testified he twice requested defendant to let him drive and also warned him to slow down as the car approached the curve. There is nothing inherently improbable about this testimony, and its probative value was for the jury's evaluation.

The appellate court also found the verdict for plaintiff to be against the manifest weight of the evidence. Under the former practice such finding would have been binding upon us, (Ill. Rev. Stat. 1963, chap. 110, par. 92(3)(b); *Petty* v. *Illinois Central Railroad Co.* 11 Ill.2d 485), and we would regard ourselves obliged to remand the case for a new trial in accordance therewith. However, we note the General Assembly in 1965 amended section 92(3)(b) which formerly read: "(b) Error of fact, in that the judgment, decree or order appealed from is not sustained by the evidence or is against the weight of the evidence, may be brought up for review in any civil case: Provided, that, except as to equitable issues, the Supreme Court shall reexamine cases brought to it by appeal from the Appellate Courts, as to questions of law only", to delete therefrom the proviso restricting consideration by this court of appeals from the appellate court to questions of law. (Ill. Rev. Stat. 1965, chap. 110, par. 92(3)(b)). The Historical Notes indicate this change was considered necessary to conform section 92(3)(b) to the newly effective Judicial Article. Since the earlier decisions of this court relating to the force of appellate court findings that verdicts were contrary to the manifest weight of the evidence found their basis in the now repealed proviso of section 92(3)(b), it seems apparent that neither the statute nor prior decisions now restrict our review of the appellate court's evidentiary determinations.

Neither of the parties have argued or briefed this ques-

tion, but its consideration becomes necessary because plaintiff asks us to reverse the appellate court and affirm the trial court judgment entered upon the jury verdict. In our opinion, the repeal of the statutory provision restricting our review of appellate court cases to questions of law, and retention of the authorization to review errors of fact, authorizes us to review the appellate court's factual determination. Examination thereof compels us to conclude that the action of that court in vitiating the verdict as contrary to the manifest weight of the evidence was erroneous. As we earlier commented, it is undisputed that plaintiff's sworn testimony identifying defendant as the driver at the time of injury was in direct conflict with his prior out-of-court assertions that he, himself, had been driving when the crash occurred, and the appellate court quite correctly stated that the same inconsistency necessarily prevails as to plaintiff's trial testimony that he warned defendant and requested him to return control of the car to plaintiff. But plaintiff's explanation of the reasons for such earlier statements is not so inherently improbable that it may be completely disregarded, and such corroboration as is to be found in the physical evidence strengthens plaintiff's case and quite possibly may have been a major factor in the jury's determination that plaintiff's trial testimony was truthful.

A jury's resolution of disputed factual questions may not, of course, be set aside because the judge believes a different conclusion more reasonable but such action becomes proper only when the verdict is contrary to the manifest weight of the evidence. (*Allendorf* v. *Elgin, Joliet and Eastern Railway Co.* 8 Ill.2d 164, 171; *Finley* v. *New York Central Railroad Co.* 19 Ill.2d 428, 436.) Such is not the case here.

The judgment of the appellate court is reversed and the judgment of the circuit court of Henry County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*