JAMES HAYNES, Plaintiff-Appellee, *v.* CHICAGO TRANSIT AUTHORITY, Defendant-Appellant.

First District (4th Division)   Nos. 76-188, 76-652 cons.

Opinion filed April 27, 1978.

Sal M. Bianchi, of Chicago Transit Authority, John J. O'Toole, and William L. Callahan, all of Chicago, for appellant.

Sandman, Levy & Moltz, of Chicago (Donald P. Smith, of counsel), for appellee.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, James Haynes, instituted a negligence action against defendant, Chicago Transit Authority (C.T.A.), for injuries allegedly sustained from an assault and battery occurring on a C.T.A. "L" platform. The trial court denied defendant's motion for directed verdict. Thereafter, the cause was submitted to a jury which returned a verdict in favor of plaintiff in the amount of $5000. Defendant appeals.

We affirm.

The issues presented for review are (1) regarding foreseeability of the assault and failure to prevent the injury, whether the jury's verdict was against the manifest weight of the evidence, and (2) whether the trial court erroneously denied defendant's motion for directed verdict.

On October 30, 1970, plaintiff and his brother, Raymond Haynes, were returning from a visit to another brother's home via the rapid transit. They were the only passengers to alight at the Milwaukee, Damen & North station. Their testimony indicated that on that same date at approximately 3 a.m., after exiting a C.T.A. train at Damen, plaintiff was assaulted and beaten on the "L" platform by two men. As plaintiff approached the stairwell, one of the men grabbed him and the other struck him in the leg with a tire iron, knocking him down the stairs.

Raymond Haynes testified that he was a few feet in front of his brother when the assault occurred. He had already started down the stairwell when he heard a noise, turned around, and saw a man grabbing at his brother. He started back up the stairs, James was shoved past him, and then one of the men pushed him. He went to his injured brother, carried him down the remaining stairs, and drove him to St. Mary of Nazareth Hospital. No ticket agent, guard, or patrolman was on the platform at the time of the incident. Dr. Ornell Dereng testified that after examining plaintiff, his diagnosis was a fracture of the tibia. He opined that there was a direct connection between the October 30, 1970, incident and the type of injury sustained by the plaintiff.

On cross-examination of the plaintiff, regarding a deposition taken on August 21, 1972, he was asked if he had answered "No," to the question "Have you ever been convicted of a crime?" He responded affirmatively and admitted that he had been convicted of armed robbery on April 29, 1964, and was imprisoned for violation of parole.

In addition to this testimony, plaintiff introduced a study conducted by C.T.A. regarding criminal incidents at the subject station and platform as well as two adjacent stations, covering a 1-year period preceding the subject assault, *i.e.*, October 30, 1969, to October 1970. The findings of the study were as follows:

(1) Damen-North-Milwaukee station—on July 24, 1970 at 3:10 p.m., a woman passenger was held up by two youths;

(2) Western station—on June 6, 1970 at 5:25 p.m., two men held up agent; on September 16, 1970 at 2:30 p.m., a man with a gun held up agent;

(3) Division station—none.

At the close of plaintiff's case, defendant made a motion for directed verdict which was denied. The jury found for the plaintiff and returned a

verdict of $5000. Defendant's post-trial motion was denied, and it appeals.

The defendant contends that plaintiff failed to establish by a clear preponderance of the evidence (a) that the assault was reasonably foreseeable, and (b) that it could have been prevented but defendant failed to do so. Defendant argues that the study admitted into evidence was not sufficient to give notice to it of anticipated dangers, and, consequently, it had no duty to guard the platform. It concludes that the verdict of the jury is contrary to the manifest weight of the evidence.

Additionally, C.T.A. contends that plaintiff was impeached by proof of his conviction of an infamous crime, and that both he and his brother were impeached by prior inconsistent statements. It concludes that their testimony was unclear, unconvincing, and unworthy of belief. Thus, defendant argues that plaintiff failed to prove his case by a preponderance of the evidence. Relying on *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, and other cases, defendant submits that the trial court erred in denying its motion for directed verdict.

Plaintiff contends that there is sufficient evidence in the record to support the jury's verdict. Plaintiff argues that knowledge of prior criminal activities of third parties at the Damen station and the adjacent Western Avenue station was sufficient to give notice to C.T.A. that injuries could foreseeably result to its passengers. Plaintiff notes that this knowledge coupled with the absence of any type of protection at the station or on the platform formed a sufficient basis for the jury to find for plaintiff.

Next, relying on *Guthrie v. Van Hyfte* (1966), 36 Ill. 2d 252, 222 N.E.2d 492, plaintiff submits that even if the witnesses made inconsistent statements, this fact would not *per se* destroy the probative value of their testimony; it is for the trier of fact to determine where the truth lies. Plaintiff concludes that under either a *Pedrick* standard or a "manifest weight of the evidence" standard the case was properly presented to the jury, and their verdict should not be disturbed.

■■ A common carrier is under an obligation to exercise reasonable care and caution for the prevention of reasonably foreseeable assaults upon its passengers in its stations and on its platforms. (See *Rotheli v. Chicago Transit Authority* (1955), 7 Ill. 2d 172, 178, 130 N.E.2d 172, 175; *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 374, 380, 50 N.E.2d 497, 501, 503.) Knowledge of conditions which are likely to result in an assault upon a passenger, or which constitute a source of potential danger, imposes the duty of active vigilance on the part of the carrier's agents and the adoption of such steps as are warranted in the light of existing hazards. (*Neering*, at 379.) Recently, in a case analogous to the present one, the Illinois Supreme Court, citing *Watson v. Chicago Transit Authority*

(1972), 52 Ill. 2d 503, 505, 288 N.E.2d 476, 478, and *Letsos v. Chicago Transit Authority* (1970), 47 Ill. 2d 437, 441, 265 N.E.2d 650, 653, reiterated the rule as follows:

> " 'A carrier will be held liable for an assault by one passenger on another or for misconduct by one passenger which causes injury to another where the carrier has reason to anticipate the incident, and fails to exercise the degree of care and vigilance practicable under the circumstances to prevent the injury.' " *McCoy v. Chicago Transit Authority* (1977), 69 Ill. 2d 280, 285, 371 N.E.2d 625, 628.

For plaintiff to recover herein, it was incumbent upon him to show that the C.T.A. or its agents knew or should have known that an assault on a passenger was likely, and that the C.T.A. or one of its agents had ample opportunity to take preventative measures to protect all passengers but failed to do so. (*McCoy*, at 285-86.) The issues of defendant's liability are questions for the jury. *Blackwell v. Fernandez* (1945), 324 Ill. App. 597, 603, 59 N.E.2d 342, 345.

One of the critical issues for the jury's determination was whether the assault was reasonably foreseeable. Several cases have discussed this issue. In *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 379, 50 N.E.2d 497, 503, the court noted that even if the carrier might not have known of anyone being assaulted it had knowledge of hoboes and vagrants congregating around its station, which condition could reasonably result in an assault. The court stated that under these circumstances the carrier was under an obligation to exercise reasonable care and caution for the prevention of potential assaults. *Neering*, at 380.

In *Amoruso v. New York City Transit Authority* (1960), 12 App. Div. 2d 11, 207 N.Y.S. 2d 855, the court indicated that evidence of prior assaults in defendant's subway station imposed a duty on the carrier to take reasonable precautions for the protection and safety of its passengers.

In *Watson v. Chicago Transit Authority* (1972), 52 Ill. 2d 503, 288 N.E.2d 476, the facts showed that an apparently intoxicated passenger boarded a bus and demanded change from the plaintiff-passenger who refused the request. The assailant brandished a gun, and an altercation ensued. Despite the struggle and screams from other passengers, the driver continued for several blocks. As the struggling parties approached the rear door, the driver opened the door while the bus was still in motion, causing them to fall to the ground. The gun discharged and injured the plaintiff. The court reversed the directed verdict entered in favor of the defendant and held that, under these facts, the issue of defendant's liability was a question for the jury to decide. *Watson*, at 505-06.

Finally, in *McCoy v. Chicago Transit Authority* (1977), 69 Ill. 2d 280, 371 N.E.2d 625, the facts show that three apparently intoxicated men boarded the third car of a C.T.A. train; they were talking loudly. The

conductor heard a passenger tell one of the men not to bother him. The conductor told the man to "Cool it," and not bother the passenger; he testified that the men appeared to be "bent on mischief" when they boarded the train. The conductor made no effort to direct the men to the empty fourth car on the train. The men momentarily took seats, but before reaching the 35th Street station they moved to the second car. They approached plaintiff-passenger, attempted to shake his hand, but plaintiff refused. Two of the men made perjorative remarks. Plaintiff told them to leave him alone, and, thereafter, a fight ensued. After pulling out of the 35th Street station, the conductor looked to see where the men had gone and noticed the fight. He attempted to stop the altercation but failed. The conductor summoned the police at the 22nd Street station. The court found that sufficient evidence was presented from which the jury could reasonably have found that defendant's agent knew or should have known of the propensity of the men to cause trouble, and that he had both time and ability to prevent the assault but failed to take the necessary precautions. *McCoy*, at 289.

Cases involving business visitors subjected to personal attack are also relevant, as the same duties owed by the common carrier to its passengers in its stations and on its platforms are owed by the owners of business premises to their invitees. (Prosser, Torts §56, at 348-49 (4th ed. 1971).) One case of particular interest is *Mancha v. Field Museum of Natural History* (1972), 5 Ill. App. 3d 699, 283 N.E.2d 899. In *Mancha*, although the holding was in favor of the defendant due to the fact that it had no previous notice of assaults, the court commented that if the Museum had had notice of previous assaults or other violence on its premises, it would have been charged with the duty to anticipate an attack on its visitors. *Mancha*, at 704.

It follows that once a common carrier has knowledge of prior criminal acts or a condition which might result in an assault on its passengers, it is duty bound to take reasonable precautions for the protection and safety of its passengers. However, the proof must show that such acts or conditions were proximately related to the attack on plaintiff as to both time and place. *Miller v. Chicago Transit Authority* (1966), 78 Ill. App. 2d 375, 381, 223 N.E.2d 323, 326.

■■■ With cognizance of the cases aforesaid and the facts contained in the record, we must determine whether the jury's verdict is against the manifest weight of the evidence.

> "In ascertaining whether a verdict is against the manifest weight of the evidence, it has been held that a verdict will not be disturbed on review merely because (1) the jury could have found differently or (2) the judges feel that other conclusions would be more reasonable. [Citations.] Rather, in order to set aside a verdict on

the basis of it being against the manifest weight of the evidence, an opposite conclusion must be clearly evident or the jury's verdict must be palpably erroneous and wholly unwarranted. [Citations.] Moreover, in reaching such a determination, reviewing courts not only consider the jury's verdict but also the fact that the trial judge, who saw and heard the witnesses as well as heard the arguments of both counsels, denied the defendant's post-trial motions." (*Costello v. Chicago Transit Authority* (1976), 40 Ill. App. 3d 461, 466-67, 352 N.E.2d 417, 422.)

Applying these precepts to the case at bar, it is apparent that defendant's contentions are without merit. The record indicates that the C.T.A. knew of one previous robbery committed on one of its passengers at the Damen station occurring about 3 months prior to the assault and battery herein, which incident is proximately related to the assault on Haynes as to both time and place. It also knew about two ticket-agent robberies at its Western station (adjacent to Damen), the first occurring 4 months before the instant assault and the second happening about 1½ months previously. These documented incidents adequately support the jury's determination that C.T.A. had notice of potential danger to its passengers in the Damen station area.

Furthermore, defendant presented no evidence that it took precautions, after acquiring knowledge of these perpetrations, to protect its passengers. In fact, the record evinces that no C.T.A. personnel or patrolmen were on duty at the subject premises at the time of the assault on plaintiff Haynes, which clearly established a breach of C.T.A.'s duty to take reasonable steps to protect its passengers from foreseeable assaults.

■■ Additionally, defendant argues that its motion for directed verdict was improperly denied, based on the fact that plaintiff and his brother were completely impeached, and, thus, their testimony was unacceptable. The fact that a witness, either a party or otherwise, has made out-of-court statements inconsistent with his sworn testimony, does not *per se* destroy the probative value of his testimony, and it ordinarily remains for the trier of fact to determine where the truth lies. (*Guthrie v. Van Hyfte* (1966), 36 Ill. 2d 252, 258, 222 N.E.2d 492, 495.) Prior inconsistent statements do not affect the competency of the testimony of the witness or render his testimony nugatory. (*Oldham v. Kubinski* (1962), 37 Ill. App. 2d 65, 78, 185 N.E.2d 270, 275.) Evidence of a prior conviction of an infamous crime can be introduced to affect the credibility of the witness, but will not disqualify the witness. (Ill. Rev. Stat. 1973, ch. 51, par. 1.) Regarding the motion for directed verdict, it was for the judge to decide the credibility and weight to be given the testimony of the plaintiff and his brother. Regarding the manifest weight of the evidence question,

it was for the jury to determine the credibility and weight to be given the witnesses' testimony.

■■ ■ The plaintiff established that he was assaulted and battered on defendant's premises, and that as a result thereof, suffered injuries. He further established a duty on the part of the defendant and a breach of that duty. Plaintiff proved freedom from contributory negligence. We find that under the *Pedrick* standard (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14), the judge properly ruled on defendant's motion for directed verdict. We further hold that under a "manifest weight of the evidence" standard, the case was properly presented to the jury, and their verdict should not be disturbed.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DIERINGER and ROMITI, JJ., concur.