JAMES WALKER *et al.*, Plaintiffs-Appellants, v. MIDWEST EMERY FREIGHT SYSTEMS, INC., Defendant (Paul E. DeMuth, Indiv. and d/b/a Lowrey Trucking Company, *et al.*, Defendants-Appellees).

First District (5th Division)   No. 1—87—0263

Opinion filed June 29, 1990.—Rehearing denied August 14, 1990.

Phillip E. Howard, Ltd., and William J. Harte, Ltd., both of Chicago (William J. Harte, of counsel), for appellants.

Williams & Montgomery, Ltd., of Chicago (James K. Horstman, Barry L. Kroll, David J. Ryan, and C. Barry Montgomery, of counsel), for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs, James and Josephine Walker, appeal from a jury verdict in favor of defendants, Paul E. DeMuth (DeMuth) individually and d/b/a Lowrey Trucking Co. (Lowrey Trucking), Walter Greene, and John Tunstall, finding them not guilty of negligence. We address the following two issues: (1) whether the jury's verdict was against the manifest weight of the evidence; and (2) whether Greene's prior consistent statements were improperly admitted. For the following reasons, we affirm.

Plaintiffs filed a negligence action against defendants for injuries James Walker sustained when he was run over by a truck which was owned by DeMuth and leased to Midwest Emery Freight Systems, Inc. (Midwest Emery). The accident occurred in Midwest Emery's truck storage yard and garage. Plaintiffs alleged that at the time of the accident, Greene was driving the truck and Tunstall was giving instructions to Greene. Plaintiffs alleged that DeMuth and Midwest Emery were liable under a *respondeat superior* theory of liability because Greene and Tunstall were their agents at the time of the accident. In their answers, DeMuth denied the agency relationship and Midwest Emery admitted the agency relationship.

In the first trial of this case, defendants raised an affirmative defense that plaintiffs' common law action was barred under the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*) because an employee cannot maintain a common law negligence action against his employer or a co-employee if his injuries were accidental and arose out of and in the course of his employment. (See *Walker v. Midwest Emery Freight Systems* (1983), 119 Ill. App. 3d 640, 461 N.E.2d 1373.) The trial court struck the affirmative defense based on its finding that, as a matter of law, Walker was an independent contractor and not an employee of Midwest Emery. After trial, the jury returned a verdict in favor of plaintiffs, and defendants appealed, arguing that the trial court erred when it struck their affirmative defense. The appellate court agreed and held that, based on a truck lease agreement between Walker and Midwest Emery, Walker was an employee of Midwest Emery. Accordingly, defendants should have been allowed to present evidence on the affirmative defense. The court further found that although Walker was an employee of Midwest Emery, there was a question of fact as to whether Walker's injury arose out of and in the course of his employment. The jury's verdict was reversed, and the case was remanded for a new trial. On remand, a second jury trial was held which resulted in a verdict of not guilty for defendants and this appeal followed. From the record of the

second trial, we summarize below only the testimony relevant to our decision.

Plaintiff James Walker testified that on March 24, 1974, he was in Midwest Emery's yard performing maintenance on two trucks he owned and leased to Midwest Emery. His employee, David Hardin,[1] was assisting him. Greene and Tunstall were also in the yard attempting to start their trucks, which would not turn over due to cold weather. The trucks were owned by DeMuth, leased to Midwest Emery, and Greene and Tunstall were the drivers assigned to the trucks.

Walker testified that Greene and Tunstall asked him and Hardin to help them start Tunstall's truck. They attached Walker's truck (a tractor-trailer combination) to Tunstall's truck (a tractor) with a chain and intended to tow Tunstall's truck while spraying ether into the engine to encourage the engine to start. Hardin drove Walker's truck, Greene drove Tunstall's truck, and Walker was positioned behind the cab of Tunstall's truck on the passenger side. Walker was to spray ether into the engine when the truck started to move.

Walker testified that Tunstall was acting as a flagman for him. When Walker was in position, Tunstall asked whether he was ready. Walker responded he was ready, and when the truck started to move, he sprayed ether into the engine while holding on to a grab handle on the truck. After travelling 25 feet, the truck engine started and coasted another 25 feet before it came to a stop. Walker asked twice whether it was okay to get off the truck but he could not hear anyone because of the noise. He also could not see anyone. After receiving no response for approximately 12 to 15 seconds, Walker started to climb off the truck. When he released his grip, the truck jerked and moved forward, causing him to fall to the ground. The truck ran over him.

Under cross-examination, Walker testified that after he finished working on his truck and before he helped start Tunstall's truck, there were a couple of drops of oil on the floor in the area where he was working. However, at a deposition taken on December 17, 1981, he testified that before he helped start Tunstall's truck, he was cleaning up a four-foot spot of grease and oil on the floor. At trial, Walker testified that he did not step in the spot and, although he did not check his shoes, he did not have grease or oil on them.

Evidence was introduced that Walker filed an application for workers' compensation benefits and accepted checks from Midwest Emery from April 9, 1974, to November 4, 1974. Also, evidence was introduced that Midwest Emery paid certain medical bills on Walker's behalf.

---

[1]Hardin did not testify at trial.

Paul DeMuth, who was called as an adverse witness in plaintiffs' case in chief, testified that within a couple of days of the accident, he spoke with the man who was driving Tunstall's truck but he could not remember whether that man was Greene or Tunstall. That man told DeMuth that Walker fell off his own truck and that the accident did not occur in Midwest Emery's yard but in the street outside the yard.

Defendant Greene, who was also called as an adverse witness, testified that Walker volunteered to help start Tunstall's truck. At the time of the accident, Tunstall was walking away from the trucks. The truck travelled approximately 15 feet before it started and another 10 feet before it stopped for a total trip of 25 feet. Greene felt a bump after the engine started but before the truck stopped. Greene testified that after the truck stopped, it did not move or jerk forward. After the truck stopped, Greene learned Walker was run over. Immediately after the accident, Walker was lying on the ground and told Greene that he may have had grease on his shoes because he just slipped off the truck.

Greene admitted that in a deposition taken on January 18, 1980, he testified that the truck was pulled around the yard once, which was approximately the distance of one block, at a speed of five miles per hour and that after Walker fell, the truck travelled another 25 to 30 feet before it stopped.

Greene also admitted that he signed a statement dated March 16, 1976, which was two years after the accident. In the statement, Greene said he and Tunstall asked Walker to help them. Walker's truck was connected by a chain to Tunstall's trailer, although the statement mistakenly referred to a trailer rather than a tractor. Hardin was driving Walker's truck, Greene drove Tunstall's truck, and Tunstall gave Hardin a signal to start moving. Greene said Hardin was directing the procedure, although it was apparent from the statement that because Hardin was driving one of the trucks, the reference should have been to Tunstall instead of Hardin. After being pulled a short distance, the engine started. The truck moved approximately 50 feet, and Tunstall, who was walking at the side, signalled Hardin and Greene to stop. When the truck stopped, Greene shifted to low gear with the clutch engaged, and pumped the accelerator pedal. After 10 to 15 seconds, Tunstall pointed to the tight chain connecting the two trucks, indicating he wanted Greene to move the truck closer so he could unhook the chain. Greene forgot Walker was on the back and he let the clutch out, causing the truck to move forward with a jerking motion. No one warned Walker that the truck was about to move. Greene felt a thump and saw Tunstall run to the

rear of the tractor. Greene jumped out of the cab and saw that Walker had been run over. The only statement that Greene heard Walker make after the accident was that Walker did not expect the truck to move forward a second time after it stopped.

Greene testified at trial that the statement was the result of his interview with an investigator from plaintiffs' attorney's office. Walker and Hardin were present at the time. Greene told the investigator the same account of the accident as he testified to in court. The investigator took notes during the interview and afterward told Greene he would be in contact with him. A few days later a second man came to his home with the typewritten statement consisting of five pages. Greene read the first 1½ pages, which he testified were accurate, and signed the statement twice on each page and at the end. He was not rushed to sign the statement and assumed that it accurately reflected his discussion with the investigator.

Greene testified, however, that the description of the accident contained in the statement was not true. Additionally, the statement contained some mistakes, such as referring to a trailer rather than a tractor, stating Hardin directed the procedure when it should have said Tunstall, and stating that Greene shifted the truck into low gear although Greene testified it would have been impossible to do that after the truck was only stopped for 10 to 15 seconds in the cold weather.

When examined by his attorney, Greene testified that on March 26, 1974, which was two days after the accident, he made a statement to DeMuth concerning the accident. In that statement, Greene said Walker offered to help start the truck. The truck moved 25 feet and started without a jerk. The truck was pulled another 25 to 30 feet before it stopped. After the engine started, he pushed in the clutch and heard someone yell to hold it. He felt two bumps and the truck came to a stop. He saw Walker on the ground behind his truck. Walker told Greene that he must have had grease on his shoes because he just slipped off the truck. Greene also testified that he gave a statement to Midwest Emery on April 10, 1974, approximately two weeks after the accident, where he related the same account of the accident.

Greene denied that he told DeMuth that Walker fell off his own truck or that the accident happened in the street rather than in the yard.

Jay Swinarski, plaintiffs' attorney's investigator who prepared Greene's written statement dated March 16, 1976, testified that he interviewed Greene several days before the statement was signed. He took notes of the interview consisting of "phrases, a word, maybe a

sentence" and later typed the statement. On March 16, he gave the statement to Greene for his signature. Greene read every page and signed each page twice, once at the bottom and once at the side. When Swinarski read the statement on the day he testified at trial, he discovered that he mistakenly referred to Hardin in the statement as the man who directed the procedure when it should have been Tunstall. On cross-examination, Swinarski admitted that he threw away his notes from the interview with Greene.

John Tracey, who was formerly an executive vice-president of Midwest Emery, testified that according to a Midwest Emery telephone report, a man named Mike Deacon, who was apparently a night watchman at the yard, notified Midwest Emery of the accident approximately 15 minutes after it occurred. The report stated "[t]ruck no. 9000 was pulling no. 641, and a Mr. Jim Walker was on the back of no. 641, and truck took a jolt, and Mr. Walker was hit." Tracey also testified that a report of Midwest Emery's director of safety, dated three days after the accident, stated "[e]mployee was standing on side of tractor helping to start it when it suddenly jerked forward causing him to fall to the ground. The tractor then ran over Mr. Walker." Plaintiffs' attorney offered the director of safety's report only against Midwest Emery.

At the close of plaintiffs' case in chief, they filed a third-amended complaint eliminating the allegations of *respondeat superior* against Midwest Emery. Subsequently, Midwest Emery was granted a directed verdict without objection from plaintiffs, and as a result, it is not a party to this appeal.

In defendants' case in chief, Tunstall testified that Walker offered to help start the trucks and Tunstall did not give any signals during the procedure. As the truck started to move with Walker on the back, Tunstall walked back to the garage because it was cold outside. He looked over his shoulder and saw Walker had fallen. He did not see the truck actually run over Walker. The truck had travelled 40 to 50 feet. He went to Walker, who was lying on the ground, and another person was already there, although Tunstall did not remember who that person was. Tunstall thought he reached Walker before Greene. He stayed with Walker until the ambulance came and did not hear Walker say that he may have had grease on his shoes.

Tunstall was questioned about a written statement dated July 15, 1974, given to Lowrey Trucking; however, Tunstall testified he did not recall giving the statement. In that statement, Tunstall said that he saw Walker fall off the truck between the fuel tank and the right rear wheel. The rear wheels of the truck were sliding without traction

and pushed Walker in front of them for 8 to 10 feet. Greene released the clutch and then the wheels ran over Walker's upper legs and hip. The statement consisted of several pages which purported to be signed by Tunstall on each page. Tunstall testified that the signature on the first and second pages appeared to be his but he did not remember signing them. He testified that the signatures on the remaining pages did not appear to be in his handwriting.

The jury returned a general verdict in favor of defendants and answered special interrogatories finding that Greene and Tunstall were not negligent and that at the time of the accident, Greene and Tunstall were loaned employees to Midwest Emery acting within the scope of their employment with Midwest Emery. Plaintiffs' post-trial motion was denied and they now appeal.

OPINION

I

Initially, plaintiffs argue that the jury's verdict in defendants' favor was against the manifest weight of the evidence.

Generally, a jury verdict will not be overturned on appeal unless it was against the manifest weight of the evidence. (*Friedland v. Allis Chalmers Co.* (1987), 159 Ill. App. 3d 1, 511 N.E.2d 1199.) A jury verdict should be reversed when it was "palpably erroneous and wholly unwarranted, was clearly the result of passion or prejudice, or appears to be arbitrary, unreasonable, and not based upon the evidence." (*Friedland,* 159 Ill. App. 3d at 9, 511 N.E.2d at 1205.) In considering an argument that the jury's verdict is against the manifest weight of the evidence, the reviewing court must consider the evidence in a light most favorable to the appellee. *Sloan v. O'Dell* (1987), 159 Ill. App. 3d 268, 512 N.E.2d 105.

In this case, plaintiffs sought to hold Greene and Tunstall liable, arguing that after the truck stopped, Greene moved it again without warning Walker and that Tunstall was acting as a flagman for Walker but failed to signal him that it was safe to get off the truck and directed Greene to move the truck forward without warning Walker.

Viewing the evidence in a light most favorable to defendants, Greene denied that he moved the truck a second time after it stopped and testified that he felt a bump before the truck even stopped. Further, Greene testified that immediately after the accident, Walker said he may have had grease on his shoes because he slipped off the truck. Tunstall testified that he did not act as a flagman for Walker and that at the time of the accident he was walking away from the truck. This

testimony supports the jury's verdict in defendants' favor and supports their finding that Greene and Tunstall were not negligent. Therefore, the verdict was not against the manifest weight of the evidence.

Plaintiffs, however, contend the jury's verdict was against the manifest weight of the evidence because neither Greene's nor Tunstall's testimony was believable.

■ It is the jury's function to evaluate the evidence and assess the credibility of the witnesses. (*Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 437 N.E.2d 872.) The reviewing court cannot resolve contradictory testimony or reevaluate the evidence and cannot reverse "a jury verdict merely because it could have reached a different conclusion [citations], even if there is conflicting evidence on factual questions which is of substantially equal weight." *Pietka*, 107 Ill. App. 3d at 553, 437 N.E.2d at 879.

Plaintiffs argue that Greene's trial testimony was not believable because two documents admitted into evidence contradicted his trial testimony. One document was Midwest Emery's report of a telephone call notifying it of the accident, and the other document was Midwest Emery's director of safety's report of the accident. Both documents indicated that the truck suddenly jerked forward, causing Walker to fall. Plaintiffs offered the director of safety's report only against Midwest Emery, and because plaintiffs subsequently amended their complaint eliminating the allegations of *respondeat superior* against Midwest Emery, that document was not admissible against Greene. Defendants contend that the telephone report was also admitted only against Midwest Emery; however, that claim is not supported by the record. The telephone report then was merely evidence that contradicted Greene's trial testimony and it was the jury's function to resolve the contradictions in the evidence.

Plaintiffs also point to several instances where Greene and Tunstall were allegedly impeached with their prior inconsistent statements.

■ The probative value of a witness' trial testimony is not destroyed by the witness' out-of-court statement that is inconsistent with his trial testimony. (*Guthrie v. Van Hyfte* (1966), 36 Ill. 2d 252, 222 N.E.2d 492.) "[I]t ordinarily remains for the trier of fact to determine where the truth lies." (*Guthrie*, 36 Ill. 2d at 258, 222 N.E.2d at 495.) The jury must evaluate the witness' trial testimony, the prior inconsistent statement and the explanation of it, and assess the witness' credibility. *Guthrie*, 36 Ill. 2d 252, 222 N.E.2d 492.

Relevant to Greene, plaintiffs rely on his oral statement to De-

Muth that the accident occurred outside the yard, his statement to Midwest Emery dated March 26, 1974, where he stated he was an employee of Lowrey Trucking, his statement to plaintiffs' attorney's investigator which was consistent with Walker's trial testimony, and his deposition testimony where he stated the truck travelled around the yard once before Walker was run over.

At trial, Greene denied that he told DeMuth the accident occurred outside the yard. He also testified that the written statement prepared by plaintiffs' attorney's investigator did not reflect the description of the accident he gave to the investigator and that he did not read the entire statement before signing it.

Relevant to Tunstall, plaintiffs rely on a statement he gave on July 15, 1974, describing the accident in detail, where at trial he testified that he did not see the accident.

At trial, Tunstall testified that he did not remember giving the statement and that some of the signatures on the statement were not his.

■ Although there were inconsistencies between Greene's and Tunstall's prior statements and their trial testimony, it was the jury's function to evaluate their testimony, their prior inconsistent statements, and any explanations of the statements. In this case, the jury found Greene's and Tunstall's trial testimony believable and its verdict was supported by the evidence. Therefore, we will not disturb the verdict.

Based on our finding, it is not necessary to address plaintiffs' additional contention that the jury's special interrogatory finding Greene and Tunstall were loaned employees to Midwest Emery acting within the scope of their employment was also against the manifest weight of the evidence.

## II

■ Plaintiffs next argue that the trial court erred when it allowed Greene's attorney to rehabilitate Greene with two prior statements he made which were consistent with his trial testimony. One of the statements was given to DeMuth on March 26, 1974, which was two days after the accident, and the other was given to Midwest Emery on April 10, 1974, which was 2½ weeks after the accident. Both statements were made before plaintiffs filed their complaint. The trial court admitted the statements finding they were made before Greene had a motive to lie.

Generally, a witness' prior statement which is consistent with his trial testimony is not admissible to rehabilitate the witness. (*People v.*

*Harris* (1988), 123 Ill. 2d 113, 526 N.E.2d 335.) However, if it is charged that the witness' trial testimony is recently fabricated or that the witness has some motive for testifying falsely, then a prior consistent statement can be admitted only if it was made before the motive to fabricate arose. (*Harris*, 123 Ill. 2d 113, 526 N.E.2d 335.) "[P]roof that the witness gave a similar account of the occurrence, when the motive to lie was nonexistent, or before the effect of the account could be foreseen, makes the prior consistent statement admissible." *Harris*, 123 Ill. 2d at 140, 526 N.E.2d at 346.

■ Plaintiffs argue that the statements were improperly admitted because they were made at a time when Greene had a motive to lie because he was a "possible defendant." They rely on the Illinois Supreme Court case of *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363, where a witness testified that the defendant was with her at the time of the crime. After she was impeached on this point, defendant sought to introduce her prior consistent statement that she had told the police several weeks after the crime that defendant was with her at the time the crime occurred. The trial court refused to permit this testimony. On appeal, the supreme court agreed the testimony should have been excluded because the statement was made to police several weeks after the crime and after defendant was identified in a lineup.

Plaintiffs in the present case argue that, similarly, here, Greene's prior consistent statements were made within several weeks of the accident and, therefore, were made at a time when Greene had a motive to lie. The situation in *Clark* is not analogous to the present case. In *Clark*, the prior consistent statement was not excluded solely because it was made within a few weeks of the crime; rather, it was also excluded because it was made after defendant was identified in a lineup. On that basis, the court found that the witness had a motive to lie. In the present case, Greene made the two statements within a few weeks of the accident and plaintiff contends that because he was involved in the accident he had a motive to lie. Under plaintiffs' rationale, the motive to lie existed at the time the accident occurred. However, the mere fact that Greene was involved in the accident and, as plaintiffs state, he was a possible defendant does not establish that he had a motive to fabricate the statements made within several weeks of the accident. The trial judge properly admitted the statements because they were made before Greene had a motive to lie.

■ In plaintiffs' reply brief, they raise for the first time the argument that Greene's prior consistent statements were not actually consistent with his trial testimony and, therefore, they should have been

admitted. Plaintiffs argue that in the statement given two, days after the accident, Greene stated that the truck travelled 50 to 55 feet, but at trial, Greene testified the truck travelled 25 feet. Plaintiffs did not raise this argument in the trial court and did not raise it in their post-trial motion. Accordingly, the argument is waived. (*Ford Motor Credit Co. v. Neiser* (1990), 196 Ill. App. 3d 515.) We note, however, that the claimed inconsistency is insignificant.

## III

■■■ Lastly, plaintiffs raise numerous other issues which are not relevant in light of our determination that the jury's verdict in defendants' favor and its special finding that Greene and Tunstall were not negligent were not against the manifest weight of the evidence.

Because the jury found that Greene and Tunstall were not negligent in the first instance, issues regarding their employment and whether they were acting within the scope of the employment were not relevant. Similarly, issues relating to whether Walker's injury arose out of and in the course of his employment and whether he accepted workers' compensation benefits need not be addressed.

Specifically, these issues are whether the trial judge erred by the following: found that whether Walker's injury arose in the course of his employment with Midwest Emery was one of fact for the jury; failed to rule as a matter of law that at the time of the accident Greene and Tunstall were employees of DeMuth d/b/a Lowrey Trucking and were not employees or loaned servants of Midwest Emery; admitted evidence that Walker filed a workers' compensation application and accepted benefits from Midwest Emery; sustained defendants' objection to plaintiffs' questioning of Greene on whether he testified at the first trial that he was an employee of Midwest Emery at the time of the accident; did not allow plaintiffs to question DeMuth as to whether he was told that if Greene and Tunstall were found to be Midwest Emery's employees then DeMuth and Lowrey Trucking would not be liable for Walker's injury; admitted evidence of the Interstate Commerce Commission's (ICC) regulations regarding when a truck driver is considered on duty; and tendered to the jury defendants' instructions relating to when a driver is on duty, the definition of a loaned employee, and rules of the ICC pertaining to lease agreements.

Additionally, plaintiffs raise an argument that the trial judge erred when he granted defendants' motion *in limine* prohibiting plaintiffs from introducing evidence that defendants changed attor-

neys during the course of litigation. Although from our review of the record the trial judge did not specifically rule on the motion *in limine,* we nevertheless fail to find the relevance in such testimony.

Finally, plaintiffs argue that the trial judge erred in not allowing plaintiffs to rehabilitate the testimony of Dr. Michael Carter. Because this issue relates to damages, it is not relevant.

For the foregoing reasons, we affirm the jury's verdict in defendants' favor.

Affirmed.

COCCIA, P.J., and MURRAY, J., concur.