CONVERTERS, INC., *et al.*, Appellees, v. THE INDUS-
TRIAL COMMISSION *et al.*—(George Pearson, Appellant.)

*Opinion filed June 2, 1975.—Rehearing denied September 24, 1975.*

KLUCZYNSKI and SCHAEFER, JJ., dissenting.

Herman and Tannebaum, of Chicago (Sidney Z.
Karasik, of counsel), for appellant.

Kane, Doy & Harrington, of Chicago (Arthur O. Kane,
of counsel), for appellee Converters, Inc.

MR. JUSTICE GOLDENHERSH delivered the opinion
of the court:

An arbitrator for the Industrial Commission found
that petitioner, George Pearson, suffered the permanent

and total loss of use of his right arm as the result of accidental injuries sustained while he was employed by respondent, Converters, Inc. Because petitioner's left arm had been amputated prior to this injury, the provisions of section 8(f) of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(f)) applied, and the arbitrator awarded petitioner compensation for permanent and total disability and a pension for life. A substantial portion of the award, and the pension, are payable from the Special Fund (section 8(f)) and therefore, the State Treasurer was named as a party respondent. On review the Industrial Commission confirmed the award of the arbitrator and ordered that it stand as the decision of the Commission. On *certiorari*, holding that the decision of the Commission was against the manifest weight of the evidence, the circuit court of Cook County reversed the decision, and petitioner appealed. Rule 302(a).

Petitioner was the only witness in the hearing before the arbitrator. He stated that he had worked for respondent for six years doing various jobs, but principally janitorial work. On the day of the accident he worked his usual shift which ran from 7 a.m. until 3:30 p.m. He testified that after "punching out" at 3:30 he went to the locker room to change from his work clothes. Three other employees, Morris Andrews, Marshall Lawson and Ernest Fox, were in the locker room at that time. As petitioner entered the locker room Andrews was just waking up from a nap on a bench, and when petitioner sat down to unlace his shoes, Andrews came over to him. Andrews had started talking to petitioner when he came into the locker room, but what he said was "blurry" and made no sense. He smelled liquor on Andrews's breath. He told Andrews to "get out of my face," Andrews left the room and returned moments later while petitioner was still changing his shoes. Andrews threw something wet on petitioner, and then threw a lighted cigarette at him. Petitioner's body exploded in flames. The liquid was ethyl alcohol. Petitioner

sustained severe burns to his chest, lower face, right arm and the right side of his back. Petitioner testified that he had never seen nor socialized with Andrews away from work. He was taken to the hospital "about an hour" after he was injured.

On review before the Industrial Commission, Robert Cadieux, an officer with the sheriff's police of Cook County, called by respondent, testified that, as the detective assigned to the case, he interviewed the petitioner for five minutes at 8:40 p.m. on the date of the injury, in the emergency room of Von Solbrig Hospital. Officer Cadieux stated that petitioner told him "there was a fight over ten dollars Mr. Andrews accused him [petitioner] of taking from him [Andrews] *** over a crap game," and that the burns were incurred at 6 p.m.

Ernest Fox, a witness for the respondent, testified that he was present when petitioner was burned "around 6:30, twenty to seven" p.m. Fox stated that he had finished work between 3 and 4:30, and that before the incident occurred "they was shooting craps," but that the game had been over for one-half hour when the burning took place. "[A]fter the dice game was over, me and George Pearson was standing up, talking, and Morris Andrews, he walked in and he looked weird. They looked at each other. Then he picks up a bottle off the table and throws it on Mr. Pearson. And he lights a match and throws the match on Mr. Pearson and then he broke in flames." He testified that the foreman came in to see what had happened, and called the police and ambulance. He stated that both Pearson and Andrews had been involved in the dice game, that he had never seen a dice game in the locker room before that date, and that he did not remember everyone who had been involved in the game. Fox stated that no foreman participated in the game, and that Andrews did not appear to be intoxicated.

Called as a witness for respondent, Willard Walton, a foreman, testified that Andrews had reported for work at

7 a.m. on the morning of the occurrence. At 10 a.m., he told Andrews to go home because "I don't know what he had been doing. I thought he couldn't be working. He was leery. He couldn't hold hisself up. He could have been drinking, on dope, anything." At one point in his testimony Walter fixed the time of the occurrence at 5:40 p.m. and at another time stated that petitioner was injured at 6:40 p.m. He said that he did not see the incident because, although he was on the plant premises, he was not in the locker room when it happened. Walton also testified that he saw Andrews on the premises at noon that day, at which time he again asked him to leave, and that he saw him again after the burning incident had occurred. He had never been aware of a crap game in the locker room on that day or at any other time.

It was stipulated that the records of Von Solbrig Hospital contained an entry that the time of petitioner's arrival there was 7 p.m.

Webber Shaw, called by petitioner, testified that he was employed by respondent as an ink maker, that the day of the incident was his day off, that he went to the locker room at noon that day to retrieve a personal item from his locker, and that he left approximately 15 minutes later. He stated that he saw petitioner lying on a bench and saw "some fellows" shooting dice. After objections to questions concerning crap games and Walton's participation in them had been sustained, petitioner's counsel made the following offer of proof: "If this witness were permitted *** he would testify that for five years prior to October 25, 1969 [the date of the injury], the crap game took place on the premises of Converters, Inc., once or twice a week and that the foreman, Willie Walton, participated in said games." In response to an objection to the offer of proof, the arbitrator stated: "The offer may stand." Shaw further testified that while he was in the locker room he did not see petitioner engaged in the dice game.

Marshall Lawson, called by petitioner, testified that he

was an instructor with the State of Illinois Department of Mental Health and that at the time of the accident he was employed by respondent. He stated that he drove Andrews to work on the day of the accident, that Andrews was intoxicated that morning, that Walton ordered Andrews not to work that day, that at 10 a.m. he heard Andrews and petitioner arguing in the locker room about whether Andrews would get out of the way so petitioner could mop the floors. He stated that later that afternoon he was a participant in a dice game in the locker room, that Andrews and the foreman, Willie Walton, also played and that petitioner was making side bets in the game but did not pass any money. Lawson testified further that he heard Andrews complaining that petitioner had taken some money from him. At 11:45 a.m. Andrews was still intoxicated. Lawson fixed the time of the burning incident as between 6 and 8 p.m., and stated that petitioner was "in and out" of the room in which the crap game took place from noon until about 7 o'clock.

Johnnie Robinson, called by petitioner, testified that he was petitioner's first cousin and employed by respondent, that he saw Andrews shortly after 7 a.m. on the date in question, that Andrews was unable to work, smelled of liquor, and spoke in an incoherent manner. He stated that when he left work at 3:30 p.m., Andrews was still in the locker room, that there was a dice game in progress when he left, that such games had been played there regularly, twice a week, for at least four years prior to the date of the burning, and that in the past he had seen the foreman, Willie Walton, participate in several of the dice games.

Petitioner contends that "it was the province of the Industrial Commission to judge the credibility of the witnesses and to determine all disputed issues of fact" and that the evidence sustained the finding that his injury arose out of and in the course of his employment. Respondent contends that petitioner's injuries did not arise out of and in the course of his employment but resulted from a

personal dispute, not related to his employment, and that the judgment should be affirmed.

The resolution of disputed questions of fact is primarily the function of the Industrial Commission. (*Gubser v. Industrial Com.*, 42 Ill.2d 559.) The Commission "must hear and judge the credibility of the various witnesses, sift the evidence, determine where the preponderance of the evidence lies, and then, upon such determination, render its decision." (*B. F. Gump Co. v. Industrial Com.*, 411 Ill. 196, 198.) On review "the function of this court is limited to a determination of whether findings of the Industrial Commission are against the manifest weight of the evidence. [Citations.] Too, we hold that if the evidence is conflicting or of a nature which permits the reasonable drawing of differing inferences, we will not set aside the award solely because we might have made a finding on the evidence different from the one made by the Commission or because we might have drawn inferences other than the ones reasonably drawn by the Commission." *Gubser v. Industrial Com.*, 42 Ill.2d 559, 562.

The testimony of petitioner, Walton, Lawson and Robinson shows that Andrews was on respondent's premises in an intoxicated condition and that Walton, respondent's foreman, was aware of his presence and his condition. Lawson's testimony shows that at 10 a.m. petitioner and Andrews had engaged in an argument over Andrews' refusal to get out of the way so petitioner could mop the floors. This testimony was sufficient to support a finding that the assault by Andrews, petitioner's intoxicated co-employee, whose presence and condition were known to respondent, resulted from the argument following Andrews's refusal to move out of the way so that petitioner could perform his work, and that petitioner's injuries arose out of and in the course of his employment. There was, of course, a conflict in the testimony concerning whether there was a dice game and as to the time of

the accident, but an examination of the testimony fails to provide a basis for holding that the Commission's findings are contrary to the manifest weight of the evidence. Nor is the testimony of Cadieux concerning petitioner's purportedly inconsistent statement controlling, for, as this court said in *Guthrie v. Van Hyfte,* 36 Ill.2d 252, 258, "The fact that a witness, be he a party or otherwise, has made out-of-court statements inconsistent with his sworn testimony does not *per se* destroy the probative value of his testimony, and it ordinarily remains for the trier of fact to determine where the truth lies. (58 Am. Jur., Witnesses, [sec.] 863; *Chicago City Railway Co. v. Ryan,* 225 Ill. 287, 289; *Mathews v. Granger,* 196 Ill. 164, 171.)"

The Industrial Commission's resolution of a disputed factual question may not be set aside because the reviewing court is of the opinion that a different conclusion is more reasonable. The decision of the Commission is to be set aside only when it is against the manifest weight of the evidence. We do not agree with the circuit court, and its judgment is therefore reversed and the award of the Industrial Commission is reinstated.

*Judgment reversed; award reinstated.*

MR. JUSTICE KLUCZYNSKI, dissenting:

I would affirm the judgment of the circuit court denying the award because I find the evidence totally insufficient to support the majority's conclusion that petitioner's injuries arose out of and in the course of his employment. This court on prior occasions has affirmed judgments of the circuit court setting aside awards of the Industrial Commission where a claimant has failed to sustain his evidentiary burden. *E.g., Bethlehem Steel Corp. v. Industrial Com.,* 41 Ill.2d 40; *Schroeder Iron Works v. Industrial Com.,* 36 Ill.2d 519.

In the present case petitioner finished his work at 3:30 p.m. on the day of the attack. His testimony indicates that the attack occurred shortly thereafter. The

testimony of three co-employees is contrary to this position and placed the time of the attack nearly three hours later. Their testimony is supported by petitioner's hospital admission record reflecting his admittance at 7 p.m. It seems completely unlikely that petitioner would not have sought medical attention for several hours in view of the extensive injuries which he sustained. The overwhelming evidence establishes that the attack occurred after 6 p.m., nearly three hours after petitioner had completed his work.

The mere fact that an assault by a co-employee occurs while on the employer's premises does not necessarily warrant an award of compensation to the injured employee. Such injuries though are compensable if they are related to a risk inherent or incidental to the performance of employment duties. (*Thurber v. Industrial Com.*, 49 Ill.2d 561, 563-64.) The majority would seem to premise its decision upon its conclusion that the attack upon petitioner was related to an incident occurring earlier that day when Andrews refused to move in order to allow petitioner to mop the floor. According to petitioner's witness, Marshall Lawson, this argument ensued at 10 a.m., about eight hours before the attack. The evidence, however, clearly preponderates in favor of the conclusion that the attack resulted from a personal matter culminating in an altercation over the dice game which had been played throughout the day in the locker room. According to the testimony of Ernest Fox and Lawson, petitioner had actively participated in the gambling.

Moreover, petitioner's own admission to the police shortly after the attack negates an award in this case. The majority dismisses this statement by asserting that it is for the trier of fact to determine where the truth lies. In my opinion a statement given to the police in a hospital emergency room shortly after a traumatic injury concerning the cause of that injury is far more reliable than a significantly different version which later emerges

when the injured party seeks monetary reimbursement.

The majority permits recovery to the petitioner primarily predicated on his own testimony which in its crucial part is inconsistent with his prior behavior and is, in my opinion, obviously false. Under such circumstances an award is improper. *Cf. Rockford Clutch Division, Borg-Warner Corp. v. Industrial Com.*, 37 Ill.2d 62, 68.

MR. JUSTICE SCHAEFER joins in this dissent.