JOHN JOSEPH CORNEILLER, a Minor, by John A. Corneiller, his Father and Next Friend, Plaintiff-Appellee, *v.* SCHOOL DISTRICT 152½, Defendant-Appellant.

First District (1st Division)    No. 77-1255

Opinion filed July 5, 1978.

550

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Patterson Gloor and Stanley J. Davidson, of counsel), for appellant.

Philip E. Howard, of Chicago (William J. Harte, Ltd., of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Suit was brought on behalf of John Corneiller (plaintiff), a minor, seeking damages from School District 152½ (defendant) and Gladys Vandenbil (Vandenbil) for injuries sustained when plaintiff's right foot came into contact with a school bus owned by defendant and driven by Vandenbil. During trial, plaintiff dismissed Vandenbil as codefendant. The jury returned a verdict in favor of defendant. We allowed defendant leave to appeal from an order of the trial court granting plaintiff judgment notwithstanding the verdict and ordering a new trial on the issue of damages only. Ill. Rev. Stat. 1977, ch. 110A, par. 306.

Defendant contends the trial court erred in granting judgment notwithstanding the verdict, urging that under the standard established in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, the evidence viewed in the light most favorable to defendant supports the verdict of the jury. Plaintiff claims the evidence overwhelmingly favors a finding of negligence so that no contrary verdict can possibly stand. Alternatively, plaintiff contends this court should remand the cause for a new trial on all issues or should remand the cause for a ruling by the trial court as to whether this cause should be retried on all issues.

The incident occurred at 3:30 p.m. on March 7, 1972, outside Woodland School, located at the southwest corner of 169th Street and Western Avenue in Hazel Crest, Illinois. 169th Street runs east and west. Western Avenue runs north and south. Both roads are 20 to 24 feet wide. The school is set back a short distance from the corner. A grassy stretch extends south from 169th Street along the west edge of Western Avenue. A faculty parking lot borders the southern side of 169th Street. The grassy area begins approximately 4 feet south of the southwest corner of the intersection. A curbless sidewalk begins west of two crosswalk lines painted across Western Avenue. This walk becomes part of the pavement of the faculty parking lot. There is a 2- to 3-foot-wide drainage ditch between the west edge of Western Avenue and the grassy area. An east-west sidewalk 80 feet south of the intersection leads from a school entrance across the grass and drainage ditch. On the day in question the weather was clear. The ground was somewhat muddy from the spring thaw.

Vandenbil, called by plaintiff as an adverse witness (Ill. Rev. Stat. 1977, ch. 110, par. 60), testified she heard the school bell ring as she drove the bus south on Western Avenue and entered 169th Street. She stopped the bus in the intersection because she noticed plaintiff and other small boys playing at a bicycle rack near the school door. She also noticed an automobile parked on Western Avenue directly in front of the east-west sidewalk located 80 feet south of the intersection. Normally she parked the bus in front of this sidewalk, allowing the children to board without stepping through the grass and drainage ditch. She paused about 30 seconds in the intersection and then began moving the bus forward again, intending to maneuver toward the west edge of Western Avenue and to stop north of the parked car until it left and cleared the boarding point. The last time she saw plaintiff he was still at the bicycle rack, "playing around" and running east "a little bit."

She looked away from the children because she needed to look ahead during the maneuver. The right front door of the bus was within the two painted crosswalk lines when she heard a scream. She was driving under 10 miles per hour. She immediately stopped the bus, which traveled an additional 5 feet. Upon alighting from the bus she saw plaintiff lying west of the west edge of Western Avenue on the curbless sidewalk which extends west from the crosswalk lines.

On adverse examination the witness stated it was her belief plaintiff came into contact with the metal located underneath the bus door and behind the right front wheel. She did not know if the right front wheel passed over plaintiff's foot. She stated contact betwen the bus and plaintiff took place approximately 1 foot west of Western Avenue and that the bus had to go "west to the west edge" in order to make contact

with plaintiff. However, on direct examination, the witness explained she had become confused during her adverse examination and stressed several times that the bus never went over the western edge of Western Avenue.

Sandra Potts testified she was walking west onto the school parking lot and was at a point opposite the middle of the cross-walk lines when plaintiff and another little boy ran past her in an easterly direction. She was west of the west edge of Western Avenue when she heard a scream, turned around and saw plaintiff standing, holding his foot. Plaintiff was right on the west edge of Western Avenue. She laid him down on the curbless sidewalk. All four wheels of the bus were on the pavement of Western Avenue. The bus was pointed directly south and there were no tire marks at the beginning of the drainage ditch. On cross-examination the witness further explained that when she first saw plaintiff he was standing perhaps a few feet west of Western Avenue.

Plaintiff's mother arrived at the intersection several minutes after the incident. She saw plaintiff lying on the pavement 2 or 3 feet west of Western Avenue. His clothes were muddy and the right pants leg was ripped at the bottom. A tire mark was visible on the lower right pants leg.

Plaintiff, 11 years old at trial, was 6 years old at the time of the incident. He recalled that he and his friend were playing by the bicycle rack. He first saw the bus when he was running toward the crosswalk. He stated the bus was moving "toward the sidewalk." When he saw the bus he tried to stop and slid in the mud. His feet were pointed toward Western Avenue. On cross-examination plaintiff stated he "cut the corner" at the drainage ditch, planned to stop at the edge of the pavement, but forgot the ground was muddy.

It is defendant's position that from the evidence presented the jury could well have concluded Vandenbil was proceeding cautiously through the intersection and the bus remained on the pavement of Western Avenue when plaintiff slipped in the mud and slid underneath the bus. Plaintiff argues that Vandenbil's statements during adverse examination, as well as several prior inconsistent statements made by this witness to an investigator and during a deposition, overwhelmingly support plaintiff's theory of negligence.

In support of this position, plaintiff points to six instances wherein it is claimed Vandenbil's testimony was impeached. On July 11, 1972, Vandenbil stated to an investigator that she saw the boys coming toward the bus and then slammed on the brakes. At trial she denied the accuracy of this prior statement. In her deposition, Vandenbil had stated she was traveling at 10 miles per hour rather than the 0 to 10 miles per hour speed stated at trial; she first saw plaintiff slightly north of rather than directly at the bicycle rack; the right front wheel came into contact with plaintiff;

and the car blocking the east-west sidewalk departed prior to the incident. Plaintiff also contends Vandenbil's statement on adverse examination to the effect that the right front wheel left the pavement established that the impact took place 1 foot west of Western Avenue, despite Vandenbil's later statements on direct examination explaining she had erred in this description of the position of the wheel.

■■■ Defendant correctly urges that impeachment is used solely to attack the credibility of a witness, not as substantive proof and credibility remains a question of fact for the jury. In *Converters, Inc. v. Industrial Com.* (1975), 61 Ill. 2d 218, 334 N.E.2d 155, the supreme court emphasized that out-of-court statements inconsistent with testimony of a witness do not " '*per se* destroy the probative value of his testimony, and it ordinarily remains for the trier of fact to determine where the truth lies.' " (*Converters, Inc.*, 61 Ill. 2d 218, 224, quoting from *Guthrie v. Van Hyfte* (1966), 36 Ill. 2d 252, 258, 222 N.E.2d 492.) Moreover, prior inconsistent statements are introduced for the purpose of destroying the credibility of a witness "rather than to prove the truth of the matters stated in the impeaching testimony." *Kubisz v. Johnson* (1975), 29 Ill. App. 3d 381, 383, 329 N.E.2d 815, *appeal denied* (1975), 60 Ill. 2d 597; accord, *People v. Gant* (1974), 58 Ill. 2d 178, 183-85, 317 N.E.2d 564; *People v. Powell* (1973), 53 Ill. 2d 465, 472, 292 N.E.2d 409.

Therefore, we may not consider Vandenbil's prior inconsistent statements as direct evidence of liability. These various inconsistencies urged by plaintiff in this court were carefully and thoroughly presented during the examination of Vandenbil. It remained the function and responsibility of the jury to determine the extent to which Vandenbil's credibility was destroyed. Similarly, the contradiction within Vandenbil's testimony regarding whether the right front tire left the pavement of Western Avenue remained a question of fact for the jury to resolve.

Plaintiff argues that Vandenbil's testimony during adverse examination to the effect that the right front tire left the pavement bound her to that version which strongly supports plaintiff's theory of liability. Plaintiff cites *Nowak v. Schrimpf* (1963), 44 Ill. App. 2d 309, 313, 194 N.E.2d 547, wherein the court stated that "a judicial admission by a party which contradicts his allegations defeats recovery." However, the *Nowak* court emphasized the process of "an evaluation of the total testimony" provided by a witness. (*Nowak*, 44 Ill. App. 2d 309, 313.) This same concept is stressed in *McCormack v. Haan* (1960), 20 Ill. 2d 75, 78-79, 169 N.E.2d 239. There, the supreme court pointed out that whether a party has conclusively barred his claim or defense by his own testimony "depends upon an evaluation of all of his testimony, and not just a part of it. It depends, too, upon an appraisal of his testimony in the light of the testimony of the other witnesses and a consideration of their respective

opportunities to observe the facts about which they testify." We note this same point stressed once more in *Carter v. Winter* (1965), 32 Ill. 2d 275, 282, 204 N.E.2d 755, *cert. denied* (1965), 382 U.S. 825, 15 L. Ed. 2d 70, 86 S. Ct. 56, where the supreme court cited this same language from *McCormack.*

■■ Applying this teaching to the case before us, we reach the opinion that the testimony of Vandenbil did not constitute the type of judicial admission which would necessitate a result adverse to defendant. On the contrary, when we consider her testimony as a whole, and not only in part, and when her entire testimony is further analyzed in the light of the entire record, we find here an issue of fact regarding which the determination by the jury should not have been disturbed.

■■ It is our opinion that the evidence, when viewed in the light most favorable to defendant, does not so overwhelmingly favor plaintiff that the jury verdict entered in defendant's favor cannot stand. Plaintiff stated he began running toward the crosswalk, tried to stop, slid in the mud and landed underneath the bus. Sandra Potts turned following the scream and saw plaintiff standing holding his foot. It is not clearly established by those witnesses that the bus left Western Avenue and struck plaintiff on the sidewalk west of the road. Regardless of whether the bus was on the pavement or the sidewalk at time of impact, Vandenbil explained she was proceeding slowly through the intersection and only looked away from the children at the bicycle rack to maneuver the bus toward, but not over, the west edge of the pavement. In our opinion, the judgment for plaintiff notwithstanding the verdict was improvidently entered. On the contrary, the verdict of the jury in favor of defendant was in accordance with the evidence and was not contrary to the manifest weight of the evidence.

■■ There remains for our consideration that portion of the trial court order granting a new trial on the issue of damages only. We find it permissible to pass upon the merits of plaintiff's motion for a new trial, although the record does not reflect the court's reasons for entering the order and contains merely the order itself. In *Jackson v. Chicago Transit Authority* (1971), 133 Ill. App. 2d 529, 273 N.E.2d 748, this court decided that it had authority to rule upon plaintiff's request for new trial although the trial court entered only judgment notwithstanding the verdict and did not provide a conditional ruling on the alternative relief requested in plaintiff's post-trial motion. (Ill. Rev. Stat. 1977, ch. 110, par. 68.1(6).) Moreover, the trial court in the instant case in effect decided plaintiff's motion for new trial in that the court ordered a new trial on the issue of damages only.

Plaintiff's motion for new trial specified that the trial court erred:

(1) in failing to direct a verdict in favor of plaintiff on the issue of liability;

(2) in submitting jury instructions on the question of defendant's negligence; and

(3) in precluding plaintiff from introducing evidence regarding the organization and operation of the Woodland School Safety Patrol.

■■ We need not consider the first two grounds as we have already concluded the evidence is sufficient to support the verdict in defendant's favor on the issue of negligence. With respect to the third ground, the Illinois School Code provides that school boards have the power "[t]o establish and maintain a school safety patrol * * * for the purpose of directing pupils not to cross streets and highways at times when the presence of traffic would render such crossing unsafe." (Ill. Rev. Stat. 1977, ch. 122, par. 10—22.28.) However, this same section directly states, "No liability shall attach either to the school district or any individual, trustee, board member, superintendent, principal, teacher or other school employee by virtue of the organization, maintenance or operation of a school safety patrol organized, maintained and operated under authority of this section." (Ill. Rev. Stat. 1977, ch. 122, par. 10—22.28.) This grant of immunity apparently operates in favor of defendant on the patrol boy issue. Also, dismissal of Vandenbil as a codefendant terminates the issue regarding her possible liability.

■■ In addition, the record shows that defendant made a motion *in limine* to exclude all references to patrol boys. The trial court reserved ruling on this motion. However, after hearing argument of counsel, the trial court permitted plaintiff's attorney to inquire of the witness Sandra Potts and of the school principal as to whether there were any patrol boys at the scene of the occurrence. Both of these persons gave a negative response to this question. A motion by the defendant to strike these references to patrol boys was denied. In addition, plaintiff testified on direct examination that he saw no patrol boys at the corner at the time of the mishap. The record does not show any offer of proof by plaintiff as to additional evidence on this subject. In closing argument, plaintiff's counsel pointed to the absence of patrol boys in the area. We therefore conclude that the trial court gave plaintiff full opportunity to introduce evidence on this subject. In our opinion, the motion of plaintiff for a new trial lacks merit and should be denied.

We accordingly reverse the order of the trial court granting plaintiff judgment notwithstanding the verdict and a new trial on the issue of damages only. We remand this case with directions to enter judgment in favor of defendant.

Judgment reversed; cause remanded with directions.

O'CONNOR and BUCKLEY, JJ., concur.