(No. 50891.—

NATIONAL LOCK COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Earnest Benford, Appellee.)

*Opinion filed April 3, 1979.*

Rooks, Pitts, Fullagar & Poust, of Chicago (Douglas F. Stevenson and Frank C. Rowland, of counsel), for appellant.

Tuite, Morrissey, Gesmer & Finnegan, of Rockford (Jason N. Gesmer and Gerald F. Tuite, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Earnest Benford filed a claim under the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*) for injuries to his right ankle and foot allegedly sustained in an accident on May 12, 1975, while working for respondent, National Lock Company. An arbitrator found that claimant had sustained accidental injuries arising out of and in the course of employment and awarded him temporary total disability payments of $105.50 per week for 34 weeks and $83.20 per week for 54¼ weeks for a permanent 35% loss of use of his right

foot. Respondent was given credit for weekly benefits paid under its employer's group program. The Industrial Commission affirmed after hearing additional testimony, and the circuit court of Winnebago County confirmed the award. Respondent appealed to this court under our Rule 302(a) (58 Ill. 2d R. 302(a)). The sole issue is whether the determination that claimant suffered accidental injuries arising out of and in the course of his employment is against the manifest weight of the evidence. There is no contention claimant was not injured.

The evidence presented was as follows. Claimant testified before the arbitrator that on May 12, 1975, his job was to operate an elevator and to transport loads at respondent's plant. His work shift was from 7 a.m. to 3:30 p.m., and he rode to and from work each day with his supervisor, Nathaniel Walker. At 3:20 p.m. he received a call to pick up a load of hinges right away. He rushed to the fourth floor for the load and rode the elevator back to the first floor. As he was leaving the elevator, a stick fell off the load. He reached to grab the load with one hand and the fork which guided the electric truck on which the load was placed with the other hand. As he did so, he accidently pushed a button on the truck which caused the truck to jump. His ankle was caught between the truck and the elevator door. The ankle twisted; claimant straightened it out, rushed to return the truck to the battery shop since it was past quitting time, grabbed his coat, and accompanied Walker to Walker's car, which was parked in a lot across the street from the plant. Walker testified before the Commission that he did not notice anything unusual about the way claimant walked. Claimant did not talk to Walker on the way home.

Claimant testified that about 20 minutes after he arrived home, he hoed and used other tools in his vegetable garden for about a half hour. His ankle began to swell and hurt. He then purchased some Epsom salts and soaked his

ankle for about one hour until friends came to visit. His nephew removed his foot from the soaking solution and twisted the ankle to see if it was out of place. This caused excruciating pain. Claimant continued to soak his ankle and had a few drinks. His friend, James Rogers, then took him to the emergency room at St. Anthony's Hospital in Rockford. The hospital records indicate he arrived at 10:10 p.m.

Claimant testified he was told he had broken his ankle. A cast was placed on his leg from his hip to his toe. The hospital emergency room report contains a notation that claimant had caught his foot in the elevator door at respondent National Lock Company and a notation that he had a fractured ankle. No mention is made of contusions to other parts of his leg. One medical bill indicates that on August 18, 1975, and on August 25, 1975, over three months after the first visit to the emergency room, claimant received treatment for which he was charged under a billing code for "contusion hip, thigh, leg, ankle." Two X-ray reports from June and July 1975 indicated a healing fracture of the ankle. A report prepared by the examining physician, Dr. Robert Busch, on February 12, 1976, analyzes the injury to the bones in claimant's right ankle and foot. It was stipulated that if Dr. Busch testified "he would state after considering all the testimony given today, given as a hypothetical statement concerning the emergency room record and his own findings, that in his opinion the alleged accident of May 12, 1975 could or might be causally related to the condition of ill-being set forth in his report."

Nathaniel Walker, claimant's supervisor, testified before the Commission that "Gerry" Rogers called him at about 3 a.m. on May 13, 1975, to tell him that claimant would not be able to go to work that day since he had broken his leg while moving furniture down steps at his daughter's house. The substance of Walker's testimony had

been presented to the arbitrator through cross-examination of claimant. Claimant testified before the arbitrator that he had asked James Rogers to make the call since claimant had no telephone but did not tell Rogers what to say. He testified he had one daughter who lived with him and that he was not moving furniture when he hurt his ankle.

Claimant testified that on the day following the accident he called respondent's nurse, who told him that Nathaniel Walker had reported that claimant had hurt himself while moving. Claimant stated he told the nurse he had injured his ankle at work and that she said she would straighten things out. He testified he received insurance forms which were already filled out and which he signed without reading. The nurse testified that claimant inquired about medical leave on the day following the injury, but did not mention an accident at work, and that she told him she would send him insurance forms, but did not ask why he sought medical leave. The nurse further testified on cross-examination that she called claimant a few days later after she had received the emergency room report which indicated claimant had fractured his ankle at work. She stated that claimant told her he thought she knew about the accident. She then filled out a "first report of accident" and sent it to the insurance carrier for further investigation of the occupational injury claim for which insurance coverage ultimately was denied. In the interim, nonoccupational group insurance forms had been sent to claimant.

In essence, respondent argues that claimant fabricated the story that he injured his ankle at work and asserts that he must have injured his ankle and other parts of his leg while moving furniture later in the day. Respondent points to claimant's activities following the alleged accident, to the supervisor's report of Rogers' telephone account of the injury, to the billing from August 1975 under the code for contusions to the hip, thigh and leg as well as ankle, to the

medical reports that various bones in the ankle were involved, and to the nurse's testimony that claimant did not tell her of the accidental injury on the day following the accident. Respondent's argument is countervailed by claimant's testimony concerning his injury, by the medical records, and by the nurse's testimony on cross-examination that during her telephone conversation with claimant a few days after the accident he told her he had presumed she knew he had been injured at work.

The applicable principles of law are clear. Findings of the Industrial Commission will not be disturbed on review unless they are against the manifest weight of the evidence; nor will a court reject permissible inferences drawn by the Commission because different inferences might also have been reasonably drawn (*Master Leakfinding Co. v. Industrial Com.* (1977), 67 Ill. 2d 517, 524-25; *United States Steel Corp. v. Industrial Com.* (1976), 65 Ill. 2d 374, 381; *Deal v. Industrial Com.* (1976), 65 Ill. 2d 234, 237). This rule applies to the finding that there was an accidental injury which arose out of and in the course of employment. See *Ferrin Cooperative Equity Exchange v. Industrial Com.* (1976), 64 Ill. 2d 445, 448-49.

It is the function of the Commission to determine the credibility of witnesses (*Atlantic & Pacific Tea Co. v. Industrial Com.* (1977), 67 Ill. 2d 137, 142; *United States Steel Corp. v. Industrial Com.* (1976), 65 Ill. 2d 374, 381) and to resolve disputed questions of fact (*United States Steel Corp. v. Industrial Com.* (1976), 65 Ill. 2d 374, 381; *Thrall Car Manufacturing Co. v. Industrial Com.* (1976), 64 Ill. 2d 459, 463). The fact that it might be inferred that a party has made out-of-court statements inconsistent with his sworn testimony does not *per se* destroy the probative value of his testimony; it is up to the trier of fact to determine where the truth lies (see *Converters, Inc. v. Industrial Com.* (1975), 61 Ill. 2d 218, 224). Finally, the uncorroborated testimony of a claimant may support an

award. (*Atlantic & Pacific Tea Co. v. Industrial Com.* (1977), 67 Ill. 2d 137, 141.) A review of the record convinces us that the circuit court did not err in holding that the decision of the arbitrator, as affirmed by the Commission, was not contrary to the manifest weight of the evidence.

Respondent argues that an award cannot stand where the sole support for the award is the claimant's own testimony which is inconsistent with the claimant's actual behavior and is repudiated by the record. The cases cited in support of that contention are based upon factors substantially distinguishable from those present here. *Caterpillar Tractor Co. v. Industrial Com.* (1978), 73 Ill. 2d 311, 315, was concerned with whether the undisputed accident at work had caused the injury and involved stronger factors militating against an award. The claimant continued to work without complaint for several days following the accident, and an alternate cause of injury was shown through documents and testimony. The behavior of the claimant in *Rockford Clutch Division, Borg-Warner Corp. v. Industrial Com.* (1967), 37 Ill. 2d 62, 67, was clearly inconsistent with the injury claimed; following the alleged back injury, claimant sought treatment at work for an eye injury but did not mention the back injury to the company nurse, doctor or foreman. In *McDonald v. Industrial Com.* (1968), 39 Ill. 2d 396, 404-05, the issue was whether claimant had given his employer the requisite notice. The fact that the impecunious claimant paid his own medical bills and did not submit them to his employer was held to be inconsistent with his testimony that he had notified his employer and been told to seek medical care. In *Deere & Co. v. Industrial Com.* (1970), 47 Ill. 2d 144, 148, each fact asserted by the claimant was strongly refuted by other evidence.

The conduct of claimant here was not so clearly inconsistent with his testimony, nor was his testimony so

unsupported by the record, as to indicate that the decision awarding him compensation was contrary to the manifest weight of the evidence. The judgment of the circuit court is affirmed.

*Judgment affirmed.*