GTE AUTOMATIC ELECTRIC, Appellant, v. THE INDUSTRIAL COM-
MISSION *et al.* (Juanita Foote, Appellee).

Second District (Industrial Commission Division)    No. 2—84—742WC

Opinion filed June 18, 1985.

Russell D. Anderson and John W. France, both of Williams & McCarthy, of Rockford, for appellant.

Jason N. Gesmer and Gerald F. Tuite, both of Tuite, Morrissey, Gesmer & Finnegan, of Rockford, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Claimant, Juanita Foote, filed a claim seeking compensation for a back injury sustained while employed by petitioner, GTE Automatic Electric. An arbitrator awarded claimant $143.33 per week for 31²/₇ weeks for temporary total disability and $3,641.68 for necessary medical expenses, and found that the condition had not reached a permanent status. On review, the Industrial Commission affirmed the findings of the arbitrator and increased the award to 134⁶/₇ weeks of temporary total disability and $5,455.78 for medical expenses incurred by claimant. GTE appeals from the judgment of the circuit court of De Kalb County confirming the decision of the Commission.

On appeal GTE maintains that the Commission's decision finding that claimant sustained accidental injuries arising out of and in the course of her employment on October 1, 1976, is against the manifest weight of the evidence. GTE also contends that claimant did not give notice of her alleged accident to GTE within 45 days as required by the Act. Ill. Rev. Stat. 1975, ch. 48, par. 138.6(c).

Claimant was employed by GTE as a light assembler. At the arbitration hearing, she testified that on October 1, 1976, she was putting armatures on channels. While lifting a box of channels weighing between 40 and 50 pounds, she felt a severe jolt down her spine. Claimant immediately called her assistant foreman, Norman Carlson, over to her work bench and reported that she had hurt her back while lifting the box. Claimant testified that Carlson laughed but allowed her to work sitting down the rest of the day. Carlson testified that he did not recall any conversation with claimant on October 1, 1976. That evening, claimant received a massage treatment to her lower back from Dr. Thomas Matejka, a naprapath. During the previous two months, claimant had been treated by Dr. Matejka for headaches. Claimant had also been treated periodically for back pain from 1970 to 1976 by Dr. Hill, a chiropractor, for a 1970 work-related injury.

Claimant further testified that before work on Monday, October 4, 1976, she reported her back injury to her foreman, Marilee Vannice, in the presence of another employee, Charles Butz. Butz testified that he was present on that day when "the lady came in and complained of her back injury." Vannice did not recall the October 4, 1976, conversation with claimant in Butz' presence and made no record of the incident. Vannice also testified that the computerized employee job records did not indicate that claimant worked any job on October 1, 1976, involving the use of channels. Carlson states, however, that in October 1976 work was being done which required the carrying of boxes of armatures to a work bench and that occasionally women em-

ployees carried their own boxes.

Claimant testified that she continued to work in October 1976 and experienced pain in her back and right leg. Claimant returned to Dr. Matejka for several lower back massages. Claimant worked until November 3, 1976, when she was hospitalized for D&C surgery. Following her discharge from the hospital on November 5, 1976, claimant was treated by Dr. James McCoy, a chiropractor, who provided therapy, electric stimulation and X rays. Under Dr. McCoy's orders, claimant remained off work, and she continued her treatment with him until April 1977.

Claimant testified that on November 8, 1976, she called Vannice to report her D&C surgery and told Vannice that she did not know when she would return to work because of her back problems. Claimant completed an application for nonoccupational disability benefits on November 12, 1976, and wrote "Injured back lifting box of channels" in answer to the question as to how her disability occurred. Jean Suveizdis, plant nurse for GTE, testified that she had mailed the disability forms to claimant in response to Vannice's request after claimant's D&C surgery. Claimant's husband had also personally requested the forms from Suveizdis between November 5 and 16, 1976, advising that claimant had D&C surgery. Suveizdis had already mailed the forms. Suveizdis further testified that she did not receive the completed disability forms until November 20, 1976, which was her first notification of any work-related incident.

After five months of treatment, Dr. McCoy referred claimant to Dr. Stanley Brandon, an orthopedic surgeon. Claimant complained of increased pain in her lower back and numbness in her right leg and stated that she was injured at work in October 1976. On May 4, 1977, Dr. Brandon diagnosed claimant's condition as degenerative disc disease with probable ruptured intervertebrae disc. Dr. Brandon treated claimant conservatively until October 26, 1977, when claimant underwent surgery consisting of a lumbar laminectomy and spinal fusion. Upon discharge from the hospital, claimant continued treatment with Dr. Brandon and was fitted with a corset.

At the hearing before the arbitrator, Dr. Brandon testified that claimant's accident at work on October 1, 1976, could have caused her back problems and that the accident could have aggravated any preexisting condition. On cross-examination, Dr. Brandon testified that chiropractic manipulations and D&C surgery could have aggravated claimant's degenerative disc disease. Dr. Brandon stated, however, that the bed rest associated with the D&C surgery could have afforded relief to the back. Dr. Brandon further testified that claimant's

degenerative disc disease could have progressed to the condition he diagnosed in the absence of trauma. Claimant testified that after back surgery her condition had improved, but that Dr. Brandon had not permitted her to return to work.

Following the hearing in December 1977, the arbitrator found that claimant had sustained accidental injuries arising out of and in the course of her employment on October 1, 1976, and that notice was given to GTE within the time required. The arbitrator awarded compensation and payment of medical expenses, and found claimant's condition was temporary and had not reached a permanent status as of December 8, 1977.

In 1978, claimant received therapy at the hospital on five occasions. Dr. Brandon suggested that claimant return to work on August 1, 1978. Claimant called GTE and was told that she had been on a lay-off status since January 1, 1978. In the fall of 1978, claimant was examined by Drs. Dean Miller, Nathan Bear and Gerald McDonald. Dr. Bear prescribed rehabilitation and no work. Claimant also sought treatment at the Illinois Division of Vocational Rehabilitation.

Claimant was hospitalized in October 1978 under the care of Dr. Brandon after experiencing pain in her left leg and subsequent falls. Claimant was placed in traction and received medication and physical therapy and, upon release, Dr. Brandon prescribed bed rest. Claimant was again hospitalized in April 1979 when a new myelogram was performed. Dr. Carlo Scuderi examined claimant and recommended surgery. At the review hearing on May 3, 1979, claimant testified that she anticipated entering the hospital for another back operation. She complained of intense pain in her lower back and left leg. She was confined to her bed, was wearing a brace, and was not assuming any household responsibilities.

On September 29, 1979, the Commission affirmed the findings of the arbitrator with respect to accidental injury, causation, notice and temporary status. The Commission extended disability to May 3, 1979, and increased the amount of necessary medical expenses.

It is within the province of the Commission to resolve disputed questions of fact and to draw reasonable inferences from the testimony. (*Thrall Car Manufacturing Co. v. Industrial Com.* (1976), 64 Ill. 2d 459, 356 N.E.2d 516.) The Commission's findings will not be disturbed upon review unless they are against the manifest weight of the evidence. (*National Lock Co. v. Industrial Com.* (1979), 75 Ill. 2d 259, 388 N.E.2d 422.) This rule applies to the findings that there was an accidental injury which arose out of and in the course of employment and that there was timely notice. (*Ferrin Cooperative Equity*

*Exchange v. Industrial Com.* (1976), 64 Ill. 2d 445, 356 N.E.2d 559.) Moreover, the burden is upon the claimant to prove by a preponderance of credible evidence the essential elements of her claim. *Seiber v. Industrial Com.* (1980), 82 Ill. 2d 87, 411 N.E.2d 249.

■ We find ample support in the record to support the Commission's finding of an accidental injury arising out of and in the course of employment. Claimant's testimony concerning the incident is uncontradicted and fully consistent with her conduct and medical history. Claimant testified that the injury occurred on Friday, October 1, 1976, and that she was treated that evening by Dr. Matejka after sitting down the remainder of her work day. Although she continued to work in October, she complained of back pain and was treated by Dr. Matejka and following D&C surgery by Dr. McCoy from November 1976 to April 1977. Claimant sought treatment from Dr. Brandon in May 1977 and continued under his care until April 1979, when she was treated by Dr. Scuderi. Dr. Brandon testified that claimant told him that she had been injured at work in October 1976 and that her back problems occurred after this accident. The medical records also confirm claimant's account. And although the application for disability was entitled nonoccupational, the contents support her account of the injury.

Claimant's testimony concerning accidental injury is not inconsistent with the testimony of Vannice that the employee computer records did not indicate claimant worked with channels on October 1, 1976. Vannice also testified that employees must correctly enter their own jobs into the computer but that computer work records are not always accurate. Carlson testified that occasionally employees carried boxes of channels and that jobs were performed in October 1976 requiring the use of channels. And even if claimant's testimony was contradicted by Vannice, the Commission was entitled to resolve the fact question of accidental injury in claimant's favor in view of all the testimony and claimant's medical and work records.

■ The Commission was also entitled to resolve the issue of timely notice in favor of claimant. The record presents conflicting testimony on the issue of timely notice. Claimant testified that she told Carlson immediately after the incident that she hurt her back lifting a box. Claimant also testified that she reported the incident to Vannice on October 4, 1976, before work. Neither Carlson nor Vannice recalled the conversations. Claimant's account of her report to Vannice was corroborated by Butz. Claimant further stated that she told Vannice about her back injury in a telephone conversation on November 8, 1976, although Vannice testified that the conversation related only to

the D&C surgery. Claimant's application benefits indicated that it was completed within the 45-day limit. The plant nurse testified, however, that she did not receive it until November 20, 1976. In view of claimant's testimony and the corroborative testimony of Butz, the Commission finding that GTE had received notice within the 45-day statutory limit is not against the manifest weight of the evidence. See *Thrall Car Manufacturing Co. v. Industrial Com.* (1976), 64 Ill. 2d 459, 356 N.E.2d 516; *Ferrin Cooperative Equity Exchange v. Industrial Com.* (1976), 64 Ill. 2d 445, 411 N.E.2d 249.

For the foregoing reasons, the judgment of the circuit court of De Kalb County confirming the decision of the Industrial Commission is affirmed.

Judgment affirmed.

WEBBER, P.J., and LINDBERG, BARRY and KASSERMAN, JJ., concur.