# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Jones v. Bojorge*, 2013 IL App (1st) 123209

---

| | |
|---|---|
| Appellate Court Caption | ROBERT JONES, Plaintiff-Appellee, v. BIBIANA BOJORGE, a/k/a/ Claudia Bibiana Bojorge, a/k/a Claudia Cotero, a/k/a Vivian Bojorge, PIZZA HUT, PIZZA HUT OF AMERICA, INC., AND PIZZA HUT, Defendants-Appellants. |
| District & No. | First District, Fourth Division<br>Docket No. 1-12-3209 |
| Filed | June 20, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the knee injury plaintiff suffered when he was struck by defendant's pizza delivery car in the parking lot of the pizza restaurant, the trial court did not err in admitting plaintiff's prior consistent statement to his wife that he was hit by defendant's car, since the defense was based on a "full scale assault on plaintiff's credibility," and under the circumstances, plaintiff's prior statement was admissible to rebut the charge that his testimony at trial was a recent fabrication, especially when the evidence included defendant's written statement in which she admitted that she "hit the delivery guy." |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-10349; the Hon. Allen Goldberg, Judge, presiding. |
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | Andrew K. Miller and Jennifer A. Kunze, both of Miller Law Group, LLC, of Hinsdale, for appellants. |
| | Thomas M. Lake, of Dudley & Lake LLC, and Mark J. Vogg, of Law Offices of Mark J. Vogg, both of Libertyville, for appellee. |
| Panel | PRESIDING JUSTICE LAVIN delivered the judgment of the court, with opinion.<br>Justices Epstein and Pucinski concurred in the judgment and opinion. |

## OPINION

¶ 1      This personal injury appeal supplies a useful vehicle to explicate the proper use of out-of-court statements of a party. Plaintiff Robert Jones, a delivery truck driver working at a Pizza Hut location, claimed that defendant Bibiana Bojorge (defendant), a pizza delivery driver, struck him with her car as he was moving boxes of dough on his dolly, injuring his knee. At trial, defendant alleged it was plaintiff who ran into her car with his dolly, causing only a scratch on his body and on her car. Plaintiff offered defendant's written statement in which she admitted that she "hit the delivery guy" while leaving the parking lot. Defendant, meanwhile, persistently sought to portray plaintiff as an inveterate liar who repeatedly misled his physicians. Plaintiff's evidence included a prior consistent statement in which he told his wife he had been hit by "the delivery lady." After a brief trial, the jury returned a net verdict (after a 5% reduction) for $489,364.05. Defendant appeals on the lone issue that the trial judge erroneously allowed the admission of the prior consistent statement. We affirm.

¶ 2                           BACKGROUND

¶ 3      On September 28, 2008, both plaintiff and defendant were engaged in their jobs at a Pizza Hut restaurant in South Elgin, Illinois. Plaintiff was employed by a food services company which regularly provided food supplies to the restaurant. Defendant was employed by Pizza Hut as a delivery driver. She was familiar with plaintiff and his delivery activities at the restaurant, having seen him there on many occasions during her employment. To sum it up, plaintiff testified that his 18-wheeler truck was parked at the restaurant's ramp and he was in the process of moving boxes of pizza dough when he was struck by defendant's vehicle and knocked to the ground. His next memory is of defendant standing over him and apologizing for hitting him.

¶ 4      Defendant told the jury that she was familiar with plaintiff and said he routinely went about his job in a hurried fashion, overloading his dolly to the point that his vision would necessarily be obscured. She testified that it was plaintiff who crashed his dolly into her car, which then was jammed against her car's driver's door and which caused a number of boxes

to fall on her vehicle. She testified that plaintiff showed her a little scratch on his leg that was the product of the collision. Her vehicle wound up with a scratch and a damaged rearview mirror. She then went to make a delivery, and when she returned some 30 minutes later, plaintiff was still delivering product at the restaurant.

¶ 5    At trial, the defense focused resolutely on plaintiff's credibility, utilizing various inconsistent statements plaintiff made to two medical doctors who were treating him for orthopedic problems both related and unrelated to this incident, but defense counsel also sought to prove that plaintiff was lying about the accident itself. Defense counsel dubbed his tactics a "full scale assault on plaintiff's credibility" in a brief before this court. Based on our review of the record, this assessment is in no way hyperbolic. Counsel addressed the subject of credibility in the first sentence of his opening statement. Seconds later, he told the jury plaintiff "lied" to his doctor and referred to plaintiff's shortcomings with the truth in 18 of the first 19 sentences in his opening statement. As the reader will see from the following recitation of testimony, this theme was chosen even though the defense on liability posited that defendant never hit the driver, even though she had written a statement that plainly acknowledged that she had. Any objective observer would thus conclude that *both* sides had credibility issues to deal with when attempting to persuade this jury.

¶ 6    Plaintiff's case in chief began with a very brief adverse examination of the defendant driver, with the central purpose of admitting her aforementioned handwritten statement. Defendant admitted that there was a collision between her vehicle and the dolly being wielded by plaintiff. She also admitted that she wrote a statement about the incident. In that statement, she wrote (in her own hand) that the accident occurred as she was "driving out of the parking lot to take an order." She also admitted writing that in the course of her driving, she "hit the delivery guy." On examination by her counsel, defendant briefly alluded to her belief that plaintiff "tricked" her into writing the statement.

¶ 7    The next witness to testify was Stephanie Jones, plaintiff's wife (Stephanie). She testified to her husband's physical activities before and after this work injury, noting that he only had normal aches and pains before this incident, but that his normal orthopedic health deteriorated after the accident and the resulting treatment. In the course of her direct examination, the single issue of this appeal occurred when she was asked if she spoke to her husband on the date of the incident. Defendant's hearsay objection was overruled and Stephanie testified that her husband called her on the telephone and said the "delivery lady hit him." He then clarified that the driver actually hit his knee as he was outside his truck. He also told his wife that he needed her to meet him at his employer's facility, because he was not able to drive his motorcycle home. After she met him, they went directly to a hospital for evaluation. She also testified that, on the date of the incident, her husband gave her a copy of defendant's handwritten statement, which she put in her purse.

¶ 8    She went on to testify about her husband's complaints of knee pain that preceded his surgery on January 30, 2009, telling the jury that he had told her of severe pain which interfered with his ability to drive his truck. Finally, she related his continuing complaints of pain and disability after the surgery.

¶ 9    Cross-examination focused largely on Stephanie's recollection of accompanying her

husband on medical visits, with defense counsel attempting to establish plaintiff's various knee complaints before the Pizza Hut accident. Counsel also called into question the veracity of Stephanie's testimony that she had a copy of defendant's handwritten statement as early as the day of the accident itself. She again confirmed this on redirect examination.

¶ 10 Before plaintiff testified, his counsel presented the evidence deposition testimony of two medical doctors, one who actively treated plaintiff and another who performed an evaluation at the direction of plaintiff's employer. Defendant, as appellant, did not make that testimony part of the record on appeal, either in transcript or video form, so we are unable to specify their testimony, except as it was related in closing argument. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) (it is appellant's burden to provide a sufficiently complete record on appeal and doubts arising therefrom will be resolved against appellant). Suffice it to say that plaintiff was able to present testimony to the jury that he suffered a fractured tibial plateau along with a tear to his meniscus requiring surgical repair which, in all likelihood, would require a total knee transplant in the future.

¶ 11 By way of background, plaintiff testified that he was a resident of Milwaukee, Wisconsin, on the date of the accident and was employed by McLane Food Services Company, which was based in Wisconsin. At some point in time thereafter, he was terminated from that employment, which prompted him and his family to move to Mississippi, where he found work as a policeman. Plaintiff testified that he had been making deliveries to the South Elgin Pizza Hut for approximately six months before the incident in question, having been there "dozens" of times. He brought various types of product to the restaurant, including pizza dough.

¶ 12 Plaintiff testified about the specifics of the underlying incident, describing in some detail how he was struck by defendant's car as he moved a dolly loaded with packages. We are unable to accurately describe these details, because no photographs of the scene were included in the record on appeal. See *Foutch*, 99 Ill. 2d at 391-92. In any event, plaintiff testified that his vision was not obscured as a result of the number of packages on the dolly. He told the jury that he had seen defendant and exchanged a greeting with her before the accident. He explained that in the process of moving boxes of dough on his dolly, he saw defendant's vehicle nearby in the parking lot behind the restaurant. As he turned right to enter the rear of the store, he "felt a real hard impact" and that "when I come to, Ms. Bojorge was over me crying, saying, that I'm sorry I hit you, are you all right, and she helped me get up, and I went in the door and told the manager, Damien." He testified that defendant's vehicle hit his left knee and that he believed that he hit his head in the resulting fall.

¶ 13 Before leaving the Pizza Hut, he asked defendant to "write a statement on what took place," because he knew that he was going to have to make a report with his employer, since the accident happened while he was on the job. He testified that defendant agreed and gave him the short statement that was entered into evidence without objection. He told the jury he gave the handwritten statement to his wife later that same day. He stated that his act of obtaining this statement was not "tricky" in any way, as had been suggested by defendant in her earlier testimony at trial, but merely part of what he felt was expected of him as an employee. He specifically rebuked any suggestion that the statement was written weeks after the accident, testifying that she wrote it in his presence "maybe 45 minutes after" the

collision.

¶ 14 Plaintiff testified about his treatment with Dr. Pulito, who ultimately performed surgery on his left knee. He was also evaluated by Dr. Levin at the direction of plaintiff's employer. Plaintiff acknowledged that he had minor problems with his left knee that preceded this occurrence, but stated they did not prevent him from doing his job, driving his motorcycle or otherwise interfere with his daily physical activities.

¶ 15 Cross-examination focused mostly on plaintiff's prior left knee complaints, with defense counsel pointing out that plaintiff did not acknowledge any treatment for his left knee in an interrogatory answer that asked about prior medical treatment. Counsel also established that plaintiff did not accurately tell Dr. Levin or Dr. Pulito about prior treatment on his left knee. Plaintiff was also cross-examined about his lack of continuing medical care for any pain in his left knee, presumably because on direct he had testified, without objection, that he had stopped treatment because he had "no insurance and no money." In this portion of cross-examination, he admitted that there were "free clinics in Mississippi" but he had not gone to any and he also admitted to still owning a motorcycle worth $5,000 that he only seldom used because of his knee problems.

¶ 16 After plaintiff rested, defendant testified on her own behalf. As to liability, she took issue with plaintiff's version of the accident and told the jury that plaintiff's vision was obscured by a stack of boxes on his dolly and that he ran his dolly into her car. She testified she had seen plaintiff in the process of delivery on prior occasions and that he was stacking the boxes "up high" because he was "usually *** in a rush" because of other deliveries waiting to be made. She explained that she could see the boxes on the dolly, but could not see plaintiff before his dolly hit her car, breaking her mirror on the driver's side. She testified that she was concerned and asked if he was okay and he then asked if she was okay. Soon thereafter, a cook came out and plaintiff pulled up his pant leg and showed a "little scratch" on his leg before telling defendant that he had "hit myself with the dolly." Defendant denied that she was crying, but allowed that she was "scared, like any accident."

¶ 17 As for the handwritten statement, defendant testified it was written at plaintiff's request some weeks after the accident, when she happened to see him on another delivery. She testified that she naively allowed plaintiff to tell her "what to put on the note," and that he never told her that he "was going to sue" her. On cross-examination, she denied that her car hit plaintiff and specifically averred that "[h]e crashed me on the side of my *** door." She also agreed with the characterization that she was "tricked" into writing the statement where she admitted hitting "the delivery guy."

¶ 18 Defendant presented the testimony of a medical expert via evidence deposition. That evidence is similarly not in the record on appeal, but one can glean from closing argument that this doctor may have differed with the evidence offered by plaintiff's witnesses on the subject of damages and the need for future surgery. See *Foutch*, 99 Ill. 2d at 391-92.

¶ 19 Prior to closing arguments, the court instructed the jury. Of particular relevance to our determination here today, the court instructed the jury that it was to judge the credibility of the witnesses. As to damages, it is worth noting that the jury was instructed that it was not to deny or limit plaintiff's damages if they "resulted from an aggravation of a preexisting

condition or a preexisting condition which rendered the plaintiff more susceptible to injury."

¶ 20    The jury ultimately returned a verdict in the amount of $515,120.05, while also finding that plaintiff was 5% negligent, leaving a net verdict in the amount of $489,364.05. Following the trial court's denial of defendant's posttrial motion, this timely appeal was filed.

¶ 21                                                ANALYSIS

¶ 22    Of the many issues that were presented to this capable trial judge and sworn jury, defendant appeals solely because her objection to Stephanie's testimony about her husband's prior consistent statement was overruled. Defendant asserts that the trial court's decision to allow this conversation into evidence irreparably prejudiced her right to a fair trial.

¶ 23    We review a trial court's admission of evidence under an abuse of discretion standard. *Law Offices of Colleen M. McLaughlin v. First Star Financial Corp.*, 2011 IL App (1st) 101849, ¶ 28. Generally, a prior consistent statement is not admissible, since it has the tendency to bolster the credibility of the witness. *Moore v. Anchor Organization for Health Maintenance*, 284 Ill. App. 3d 874, 883 (1996). Like most rules of evidence, however, there is an exception to this general rule. "A prior consistent statement is admissible only to rebut a charge or inference that *** the witness's testimony is of recent fabrication, as long as she made the prior statement before the alleged fabrication." 2 Robert J. Steigmann & Lori A. Nicholson, Illinois Evidence Manual § 10:38, at 257 (4th ed. 2006). This evidence, however, "may not be admitted as evidence that its content is true." *Id.* (citing *People v. Walker*, 211 Ill. 2d 317, 343-44 (2004) (generally prior consistent statements are permitted solely for rehabilitative purposes and not as substantive evidence)). Defendant does not claim that the contested statement in this case was admitted substantively, so we are left to determine whether it was properly admitted in a rehabilitative fashion, to rebut a charge of recent fabrication. Similarly, defendant does not contend that the statement was inadmissible merely because Stephanie testified to its content, as opposed to plaintiff himself. See *People v. Graham*, 206 Ill. 2d 465, 478 (2003).

¶ 24    Citing *Moore*, defendant suggests that the admission of the prior consistent statement under these circumstances was "highly prejudicial." In *Moore*, the plaintiff sued defendant as a result of injuries suffered allegedly as a result of medical negligence in the course of treatment for a progressive, degenerative disease that causes anatomical fusion of bones. *Moore*, 284 Ill. App. 3d at 876. The plaintiff underwent two successful hip replacement surgeries, but subsequent to their completion, he was noted to have an arachnoid cyst that was compressing his spinal cord. The timing of the surgery, however, was not optimal and the operating surgeon opined that permanent damage had already been done. The plaintiff alleged that the cyst should have been diagnosed earlier and removed earlier, before the neurologic damage was irreversible. The plaintiff sued his internist (and his employer), claiming that he should have suspected the existence of the cyst at an earlier and more medically propitious date.

¶ 25    After the plaintiff prevailed at trial, defendants appealed, citing a number of legal deficiencies. All save one were denied by this court on appeal. This court found reversible

error in the admission of out-of-court statements by the plaintiff that were consistent with what he said at trial. *Id.* at 885. After announcing the general rule that such statements amount to improper bolstering of a witness's testimony, this court recognized the recent fabrication exception, citing *People v. Harris*, 123 Ill. 2d 113, 139-40 (1988). See *Walker v. Midwest Emery Freight Systems, Inc.*, 200 Ill. App. 3d 790, 800 (1990) (if it was charged that the witness's trial testimony was recently fabricated or that the witness had some motive for testifying falsely, then a prior consistent statement was admissible if it was made before the motive to fabricate arose).

¶ 26    The *Moore* court disagreed with the plaintiff on the main fulcrum upon which this exception exists; namely, the court did not find any proof that the defendants were saying, suggesting or implying that plaintiff was lying. *Moore*, 284 Ill. App. 3d at 884. In fact, the court pointed out that there were no remarks of counsel even consistent with the suggestion that the plaintiff had not accurately reported symptoms to his doctors. *Id.* at 884-85. In the *Moore* court's view, at best, plaintiff could only point to contradictory evidence in medical records as a basis to imply that the defendants were accusing him of fabrication. *Id.* at 885. This, the court quite properly held, was not an accurate statement of the law. *Id.* at 885-86.

¶ 27    To say that *Moore* is factually distinguishable from the instant appeal is to understate the matter considerably. As mentioned, defense counsel's opening statement in the case *sub judice* was almost exclusively focused on establishing that plaintiff was a liar who was ginning up a lawsuit against the unsuspecting defendant. While this gambit was mostly focused on the damages aspect of the suit, defendant also alleged that she was cadged into writing the equivalent of an admission of liability. As opposed to the factual scenario in *Moore*, there is no difficulty in identifying multitudinous and very direct defense accusations branding plaintiff as an outright liar. On appeal here, defendant can point to but one innocuous statement that related to the mere happening of the accident. Despite the foregoing, defendant urges us to grant her a new trial because of the prejudice inured from the admission of the conversation between plaintiff and his wife in which she testified that her husband said he was hit in the parking lot by the "delivery lady." This was consistent with his testimony at trial, but more pointedly, it is entirely consistent with *defendant's* own statement. Stated plainly, defendant would claim prejudice because Stephanie testified that plaintiff said exactly what defendant had said in her own statement. This is legally untenable.

¶ 28    Our review of the record reveals that defense counsel chose a liability theory that was at odds with his client's own admission and boldly decided to double down and call plaintiff a liar. The evidence at issue was quite relevant to disprove the defense theory of subsequent perfidy and was fairly well invited by defendant. As specifically framed by the defense, the credibility of both parties was squarely at issue, the defense having pointedly told the jury at the beginning of opening statement that plaintiff "lied" to his doctors about prior knee pain. The cross-examination of plaintiff was a thorough dissection of plaintiff's alleged caginess with his doctors, with the defense endeavoring to establish that plaintiff was lying at trial in order to make his lawsuit look better. At the start of closing argument, defense counsel returned to this theme, asking the jury: "Which of Mr. Jones' lies do I need to start with. Do I start with when he lied to Dr. Levin? Do I start with when he lied to Dr. Pulito? Do I start with when he lied to my client? Or do I start with when he lied to me?" A few

minutes later, the assault continued in earnest: "He lied to me. Why should you believe a single word Mr. Jones says. You shouldn't. He has no credibility. Not one lie *** I'm up to about nine right now and I'm only five minutes into the closing."

¶ 29 This tactic is also puzzling since the jury was properly instructed that it could not deny or limit damages if plaintiff's injury resulted from the aggravation of a preexisting injury. And it was plaintiff's preexisting knee issues that the defense said plaintiff was not entirely truthful about. Put bluntly, the defense tried to win the case by proving that plaintiff lied about his prior knee problems to his doctors, so he must have lied about the accident itself as well. At the end of the proverbial day, this assault would bear fruit only if defendant could prove plaintiff was lying about the accident itself, which was necessarily a difficult proposition given that plaintiff's liability testimony was very consistent with defendant's out-of-court statement. To use a baseball analogy, the defense went with a home run strategy of attempting to win the case by proving that plaintiff was a serial liar, but struck out with this jury which found defendant 95% at fault for the collision. The jury clearly had more confidence in the prior written statement than her testimony at trial, leaving us unable and unwilling to substitute our view for that of the jury. See *Snelson v. Kamm*, 204 Ill. 2d 1, 35 (2003).

¶ 30 As for the prior inconsistent statement, it merits mention that at trial and in this court, defendant does not criticize the admission or use of her statement, which is understandable, since it is a classic admission of a party. See *CFC Investment, L.L.C. v. McLean*, 387 Ill. App. 3d 520, 529 (2008).

¶ 31                                    CONCLUSION

¶ 32 Under the factual circumstances in this case, the learned judge below was well within his discretion in allowing the prior consistent statement since recent fabrication was the gravamen of the defense. When one party relentlessly calls the other a liar, it should not come as a surprise when the aggrieved party is allowed to introduce a single instance where he was, remarkably enough, consistent with both his *and* his opponent's original version of events.

¶ 33 Affirmed.